**GIFFORD–HILL & COMPANY, INC., Petitioner,**

v.

**WISE COUNTY APPRAISAL DISTRICT and Wise County Appraisal Review Board, Respondents.**

No. D–0201.

Supreme Court of Texas.

Dec. 4, 1991.

Opinion on Motion for Rehearing
April 22, 1992.

Gonzalez, J., filed a dissenting opinion in which Mauzy, Doggett, and Gammage, JJ., joined.

Gonzalez, J., filed a dissenting opinion on motion for rehearing, in which Mauzy, Doggett, and Gammage, JJ., joined.

William Ikard, William W. Kilgarlin, Sharmyn K. Lumsden, Popp & Ikard, Austin, for petitioner.

Russell R. Graham, Peter W. Low, Deborah S. Cartwright, Austin, James E. Forbis, Decatur, for respondents.

## OPINION

HIGHTOWER, Justice.

This is an ad valorem tax case. It involves the assessment of ad valorem taxes against limestone rock and the surface above the rock, and addresses whether limestone is a "mineral in place" or a "mine or quarry" under the Texas Tax Code. In 1987, Wise County Appraisal District created a new category of taxable property entitled "rock reserve" by separating the value of Gifford–Hill & Company, Inc.'s limestone from the value of its surface which qualified as "open-space" land. The surface was appraised based upon its productive capacity as agricultural land; however, the limestone was appraised based upon the income that it would generate upon extraction. Gifford–Hill & Company, Inc. contested the separate appraisal of its limestone. The district court held, however, that the limestone could be classified as "land," a "mine or quarry" and as a "mineral in place" for ad valorem tax pur-

poses. The court of appeals affirmed. 791 S.W.2d 576. We reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

## I.

Gifford–Hill & Company, Inc. ("Gifford–Hill") has 2500 acres of open land in Wise County, most of which it owns but some of which it leases from third parties. Gifford–Hill extracts limestone rock from its land through open pit mining and processes the rock for sale as limestone aggregate. Prior to 1987, Wise County Appraisal District ("Wise County") appraised Gifford–Hill's property by utilizing a compilation of sales prices of similarly sized and situated tracts of real estate. Wise County appraised the property at $800 per acre without reference to the underlying limestone rock. However, since most of the property was "qualified open-space land,"[1] its taxable value was approximately $56 per acre.

For the 1987 tax year, Wise County created a new category of taxable property, previously unknown in the law, entitled "rock reserve" by separating the value of Gifford–Hill's limestone rock from the value of the surface. Wise County appraised Gifford–Hill's "rock reserve" at approximately $10 million and carried forward the $800 per acre valuation of the surface from the prior year. Gifford–Hill filed a protest with the Wise County Appraisal Review Board ("Review Board") challenging the separate appraisal of its limestone and the excessiveness of the rock reserve appraisal. The Review Board reduced the appraised value of the "rock reserve" from $10 million to $7.5 million. The surface of Gifford–Hill's property remained "qualified open-space land" with a taxable value of $56 per acre. However, the rock reserve's taxable value was $7.5 million or approximately $3,000 per acre.

Gifford–Hill appealed to district court alleging that its limestone rock should have been classified as "land" and that Wise County had unlawfully valued the component parts of land which are treated as a unit for ad valorem tax purposes. In response, Wise County filed a counterclaim for declaratory judgment requesting a judicial declaration that, as a matter of law, limestone reserves are taxable as "land," a "mineral in place," and as a "mine or quarry" pursuant to section 1.04 of the Tax Code. Wise County also sought a declaration that if limestone reserves are not taxable as "minerals in place" or as a "mine or quarry," and are taxable only as part of the land, the property cannot be designated as "open-space land." Gifford–Hill amended its pleadings to request a judicial declaration that its limestone was not a "mineral in place" or "mine or quarry" as those terms are used in the Tax Code. Gifford–Hill sought removal of the rock reserve valuation from the appraisal roll (as a separately classified item) and remand of the case to the Review Board for appraisal of that portion of the open working excavation which qualified as a "quarry."[2]

After substantial discovery, both sides moved for summary judgment. In granting Wise County's motion for summary

---

1. "Qualified open-space land" is land that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted principally to agricultural use or to production of timber or forest products for five of the preceding seven years. Tex.Tax Code § 23.51(1). Section 1–d–1 of article 8 of the Texas Constitution provides: (a) To promote the preservation of open space land, the legislature shall provide by law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity and may provide by general law for taxation of open-space land devoted to timber production on the basis of its productive capacity. The legislature by general law may impose sanctions in furtherance of the taxation policy of this section.

2. Gifford–Hill also alleged that Wise County's appraisal of the non-producing limestone apart from the surface resulted in a method of taxation which was not equal or uniform in comparison to other properties containing limestone, that the limestone was appraised both as part of the "land" and the "rock reserve" and that Gifford–Hill is not the taxable owner of limestone beneath property which they have leased from others.

judgment and denying Gifford–Hill's motion for summary judgment, the district court found, among other things, that limestone is taxable as land, a mine or quarry, and as a mineral in place. The court of appeals affirmed by holding that limestone reserves are taxable as a mineral because "scientifically speaking, limestone is a mineral," and are taxable as a "mine or quarry" because those terms are defined as "a rich source." We hold that limestone is not a "mineral" as that term is used in the Tax Code, but that some limestone may reasonably be deemed to be part of a quarry.[3]

## II.

■ The issue of whether limestone rock is taxable separate and apart from the surface is one of first impression. Section 1.04 of the Texas Tax Code defines "Real property" as, among other things, "(A) land ... (C) a mine or quarry [or] ... (D) a mineral in place...." Tex.Tax Code § 1.04(2). Both parties agree that limestone rock is real property and that it is legally taxable as land.[4] They differ, however, on the issue of whether limestone is legally taxable as a "mineral in place" or as a "quarry" and thus not subject to the special appraisal afforded "open-space land." We will address this issue of first impression and then review the summary judgment evidence to determine the propriety of the district court's grant of Wise County's motion for summary judgment and its denial of Gifford–Hill's motion for summary judgment.

## III.

■ Gifford–Hill argues that its limestone is not a "mineral" for ad valorem tax purposes. We agree.

■ The term "mineral" is not defined in the Tax Code. However, section 1.03 of the Code Construction Act applies and the term "mineral" is to be construed according to common usage, or according to a technical or particular meaning if one has been acquired by legislative definition or otherwise. Tex.Tax Code § 1.03; Tex. Govt.Code § 311.011. Although there is no legislative definition of the term "mineral," a particular meaning has been acquired by judicial definition.

■ In *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994 (1949), this court considered whether the ordinary and natural meaning of the word "mineral" includes a substance such as limestone. We construed a will in which the testatrix devised "the surface rights exclusive of the mineral rights" to

---

**3.** The dissent erroneously states that the "key question is whether Gifford–Hill & Company is paying a just ad valorem tax" on its property. At 817 (Tex.1991) (Gonzalez, J., dissenting). The "key" questions in this cause are the characterization of limestone for ad valorem tax purposes and the method of appraising the limestone.

**4.** The fact that Gifford–Hill's "land" value may include the value of the limestone does not affect the land's designation as qualified open-space land. Special valuations under chapter 23 of the Tax Code, including the subchapter D open-space land valuation, are methods of appraisal that take into consideration the use of the subject property, but are not partial exemptions from taxation. *See May v. Appraisal Review Bd.*, 794 S.W.2d 906, 908 (Tex.App.–Fort Worth 1990, writ denied). Wise County has argued that Gifford–Hill's limestone must be valued and taxed immediately, otherwise the land would vanish, leaving one huge hole and no tax revenue. We note, however, that when the use of any portion of Gifford–Hill's property changes from qualified open-space land, an additional tax will be imposed. Section 23.76(a) of the Tax Code provides:

If the use of land that has been appraised as provided by this subchapter changes, an additional tax is imposed on the land for each of the five years preceding the year in which the change of use occurs that the land was appraised as provided by this subchapter and the tax that would have been imposed had the land been taxed on the basis of market value in each of those years, plus interest at an annual rate of seven percent calculated from the dates on which the differences would have become due.

In determining the fair and equitable valuation of Gifford–Hill's property, the dissent inexplicably fails to consider (or even mention) the additional tax imposed when use of qualified open-space land changes. *See* Tex.Tax Code §§ 23.-55, 23.76.

one party and the "mineral rights" to another party. The controlling question was whether commercial limestone was included in the devise of "mineral rights." In deciding the question, this court looked to evidence concerning the nature of limestone, its relation to the surface of the land, its use and value, and the method and effect of its removal. 217 S.W.2d at 995–96. We recognized that the scientific or technical definition of minerals is so broad that it would embrace not only metallic minerals, oil, gas, stone, sand, gravel and many other substances, but would include even the soil itself. *Id.* at 997. We held, however, that the ordinary and natural meaning of the word "mineral" does not include a substance such as limestone. *Id.* In *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99 (Tex.1984),[5] we reaffirmed *Heinatz* and held that limestone belongs to the surface estate as a matter of law. *Id.* at 102.[6] Thus, we hold that the term "mineral" as used in the Tax Code is to be construed according to its ordinary and natural meaning which, as a matter of law, does not include limestone.

IV.

■■■ Gifford–Hill argues that all of the limestone rock on its entire 2500 acres of land is not a "quarry" for ad valorem tax purposes. We agree.

The term "quarry" is not defined in the Tax Code or by legislative definition, thus it should be construed according to common usage. Tex.Tax Code § 1.03; Tex. Govt.Code § 311.011. Webster's Dictionary's primary definition of "quarry" is "an open excavation used for obtaining building stone, slate, or limestone." *Webster's Ninth New Collegiate Dictionary* 755, 964 (1983). The term, however, has a broader definition which includes the deposit or rich source of supply that is being quarried. *Id. See also* Thompson, *Commentaries on The Modern Law of Real Property* § 158 (1980). The court of appeals relied on the broad definition of quarry when it held that the limestone beneath Gifford–Hill's 2500 acres of land could be classified as a "quarry" for tax purposes.

We agree that the term "quarry" means more than merely the excavation existing

5. For a period of years, this court struggled to determine which substances are "surface" or "mineral." *See Heinatz v. Allen,* 147 Tex. 512, 217 S.W.2d 994 (1949); *Acker v. Guinn,* 464 S.W.2d 348 (Tex.1971); *Reed v. Wylie,* 554 S.W.2d 169 (Tex.1977); *Reed v. Wylie,* 597 S.W.2d 743 (Tex.1980). As described in *Moser v. U.S. Steel Corp.:*

> We have previously attempted to create a rule to effect the intent of the parties to convey valuable minerals to the mineral estate owner, while protecting the surface estate owner from destruction of the surface estate by the mineral owner's extraction of minerals. In so doing, we decided that determinations of title should be based on whether a reasonable use of the surface by the mineral owner would substantially harm the surface. Application of this rule has required the determination of several fact issues to establish whether the owner of the surface or the mineral estate owns a substance not specifically referred to in a grant, reservation or exception. As a result, it could not be determined from the grant or reservation alone who owned title to an unnamed substance. Determining the ownership of minerals in this manner has resulted in title uncertainty.

676 S.W.2d at 101 (citations omitted). In order to avoid "title uncertainty," we held that "a severance of minerals in an oil, gas and other

minerals clause includes all substances within the ordinary and natural meaning of that word, whether their presence or value is known at the time of severance." 676 S.W.2d at 102.

6. Concerning other substances, *Moser v. U.S. Steel Corp.* stated:

> We ... hold uranium is a mineral within the ordinary and natural meaning of the word.... We continue to adhere, however, to our previous decisions which held certain substances to belong to the surface estate as a matter of law. *See, e.g., Heinatz v. Allen,* 147 Tex. 512, 217 S.W.2d 994 (1949) (building stone and limestone); *Atwood v. Rodman,* 355 S.W.2d 206 (Tex.Civ.App.—El Paso 1962, writ ref'd n.r.e.) (limestone, caliche, and surface shale); *Fleming Foundation v. Texaco,* 337 S.W.2d 846 (Tex.Civ.App.—Amarillo 1960, writ ref'd n.r.e.) (water); *Psencik v. Wessels,* 205 S.W.2d 658 (Tex.Civ.App.—Austin 1947, writ ref'd) (sand and gravel); *Reed v. Wylie,* 597 S.W.2d 743 (Tex.1980) (near surface lignite, iron and coal).

676 S.W.2d at 102. Thus, uranium is a mineral but limestone, building stone, caliche, water, sand, gravel, surface shale, and near surface lignite, iron and coal belong to the surface estate as a matter of law.

during the extraction of a source of supply or left after a source of supply has been extracted. However, the opening of a quarry on a tract of land does not automatically subject the entire tract to ad valorem taxation as a quarry. We recognize that a deposit of limestone may extend beyond the area from which limestone is presently being produced. Some adjacent land may be in the path of the quarry and its limestone deposit may reasonably be deemed to be producing and thus considered as part of the quarry. Also, if any phase of the operation of the quarry is conducted on surface land, such land may constitute part of the producing quarry. However, other land surrounding a quarry may not be included as part of the existing quarry even though the land's value increases because the extent of the limestone is known with some certainty. See e.g. Washington Union Coal Co. v. Thurston County, 105 Wash. 208, 177 P. 774 (1919). The value of the land containing non-producing limestone should be determined by applying a per acre value to the number of acres covered by the interest rather than by an intrinsic price based upon the market price of the limestone per ton.[7] We hold that limestone is taxable as a quarry; however, the extent of such quarry must be determined by considering, among other things, surface land used in conducting the quarry operation, incomplete reclamation activities on prior production areas, mining or quarrying plans filed with state authorities, and reports from company officials and engineers.

## V.

■ In its motion for summary judgment, Wise County alleged that Gifford–Hill has 100 million tons of limestone imbedded in its 2500 acres of land. Wise County contends that its separate "rock reserve" appraisal is valid because the limestone could be taxed as a "mineral in place" or as a "mine or quarry." Based upon our discussion above, we hold that, as a matter of law, the limestone is not taxable as a "mineral in place." Thus, Wise County's summary judgment is appropriate only if the limestone is taxable as a quarry. Although the existence of a quarry on a portion of Gifford–Hill's property is undisputed, the summary judgment evidence reveals that Wise County did not identify a quarry site, determine the extent of the quarry and value it accordingly. Instead, Wise County simply estimated that there was $7.5 million of producible limestone beneath Gifford–Hill's 2500 acres of property which could be taxed in addition to the surface value. The limestone would be taxable as a quarry under such an appraisal only if the entire 2500 acres could reasonably be deemed a quarry. The parties agree, however, that much of Gifford–Hill's property is qualified open-space land that is used primarily for agricultural purposes. Property cannot reasonably be deemed to be part of a quarry and at the same time be qualified open-space land used primarily for agricultural purposes. Because the existence of a quarry on a portion of Gifford–Hill's property is undisputed and the record does not establish the extent of the quarry, a fact issue exists regarding the extent of Gifford–Hill's quarry. As a result, we hold that the district court erred in granting summary judgment for Wise County.

## VI.

The term "mineral" as used in the Tax Code should be construed according to its ordinary and natural meaning which, as a

---

7. See e.g. Tex.Tax Code § 23.17 which states: An interest in a mineral which may be removed by surface mining or quarrying from a deposit that is not being produced shall be valued at the price for which the interest would sell while the mineral is in place and not being produced. The value shall be determined by applying a per acre value to the number of acres covered by the interest.
See also Comment, Ad Valorem Taxation of Non–Producing Lignite Interests, 29 BAYLOR L.REV. 933, 936 (1977).

matter of law, does not include limestone.[8] Consequently, since we hold that limestone rock is not a "mineral" under the Tax Code, it should be appraised as "land" unless it is part of an open working excavation which constitutes a "quarry." A fact issue exists regarding the extent of Gifford–Hill's quarry, thus the district court erred in granting summary judgment. Accordingly, we reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings including a determination of the portion or portions of Gifford–Hill's property which constitute "land" or a "mine or quarry."

Dissenting Opinion by GONZALEZ, J., joined by MAUZY, DOGGETT and GAMMAGE, JJ.

GONZALEZ, Justice, dissenting.

Today's opinion creates a tax loophole big enough to drive a gravel truck through. The court's decision converts the Texas Constitution's insistence on tax fairness into a tax injustice by concluding that limestone is not taxable as a mineral in place. This conclusion undoubtedly will be viewed with as much surprise at the barbershop as at the law school or the university geology department.

In 1987, the Wise County Appraisal District assessed a tax valuation that combined separate appraisals of the surface acreage and the underlying limestone deposits. The court of appeals upheld Wise

County's appraisal, concluding that limestone is taxable as a "mineral in place" or as a "mine or quarry." 791 S.W.2d 576, 583. Today, this court reverses the court of appeals' judgment by holding that limestone is **not** a mineral for tax purposes. But the court also holds that the value of limestone in a "quarry" should figure into the ad valorem tax.

Ad valorem taxes should equitably burden the land based on the land's value so as to provide a just relation between the landowner and the taxing authority. The limestone underlying the land in question clearly adds to the land's value. That fact is undisputed. The problem is how to incorporate that added value into the tax appraisal process. The majority's exclusion from the process of all limestone except that in an open quarry fails to equitably resolve the problem. I disagree with the court's unworkable, unnecessary, and confusing formula for resolving this issue, and I believe that the judgment of the court of appeals is correct. Thus, I dissent.

The key question is whether Gifford–Hill & Company is paying a just ad valorem tax on 2500 limestone-rich-acres it owns in Wise County. This contiguous acreage contains approximately thirty-five years of reserves based on current levels of production. Gifford–Hill paid approximately $6,000 an acre for this land, and thus the land's current market value equals nearly $15 million. Prior to 1987, the year in issue here, Wise County taxed the land without

---

8. The dissent states that "[p]ermitting a tax on limestone as Wise County has suggested will not increase the tax liability of legitimate farmers. The agricultural use exemption protects them." At 822 (Tex.1991) (Gonzalez, J., dissenting). However, applying the dissent's reasoning, if limestone is a "mineral in place" that is not under production, it must be appraised and taxed at a rate relative to its market value. See Tex.Tax Code § 23.17 ("An interest in a mineral that may be removed by surface mining or quarrying from a deposit and that is not being produced is appraised at the price for which the interest would sell while the mineral is in place and not being produced."). Under the dissent's analysis, the limestone underlying the property

of a farmer or rancher would be valued (and taxed) as a "mineral in place" that is not under production; since the agricultural use exemption (or valuation as qualified open-space land) only applies to the surface estate and does not apply to minerals, the farmer or rancher would not be protected. See Tex.Tax Code § 23.52(f) ("The appraisal of minerals or subsurface rights to minerals is not within the provisions of this subchapter [Appraisal of Agricultural Land]."). The dissent's approach would subject thousands of unsuspecting farmers and ranchers to increased tax liability and frustrate the Constitution's intent "[t]o promote the preservation of open space land ... devoted to farm or ranch purposes." Tex. Const. art. VIII, § 1–d–1.

regard to the limestone reserves and appraised it at $800 per acre. Gifford–Hill claimed an "agricultural use exemption" and thus paid $56 per acre in taxes.

## THE AGRICULTURAL USE EXEMPTION

For land to qualify as "open space land," and thus to fall under the agriculture use exemption, the land must be devoted principally to agriculture or to the production of timber or forest products. TEX.TAX CODE § 23.51(1) (Supp.1991). The purpose of this provision is:

> To promote the preservation of open space land ... devoted to farm or ranch purposes ... [or] timber production ...

TEX. CONST. art. VIII, § 1–d–1.

Naturally, it is in Gifford–Hill's interest for Wise County to continue to tax its land as open-space land without regard to the valuable limestone reserves. But Wise County was concerned with the prospect of a 2,500 acre hole when Gifford–Hill concludes extracting all of the commercially available limestone from this property. That concern, together with the pressures of a tight budget and a shrinking tax base, led Wise County to hire an independent company to appraise the mineral estate underlying Gifford–Hill's property. The appraiser valued the limestone reserves at 10 million dollars. On appeal, the tax appraisal review board

reduced this valuation to 7.5 million dollars. Gifford–Hill does not contest this valuation.[1]

Instead, Gifford–Hill urges that since it runs some cattle on the surface estate, it is entitled to an agricultural use exemption covering both the surface and mineral estates. That contention compels this court to decide whether a mining company can take full advantage of the agricultural exemption by running livestock on the same property from which it is extracting minerals.[2] The majority agreed with Gifford–Hill's position; but I believe that at most Gifford–Hill should be allowed an agricultural use exemption for the surface estate alone. To grant them an agricultural exemption that extends to the mineral estate would flout the equities of this case and contravene the Texas Constitution and applicable state statutes.

## TAXING REAL PROPERTY IN TEXAS

The Texas Constitution provides that counties may impose ad valorem taxes on real property in proportion to the property's value. TEX. CONST. art. VIII, § 1(b). Additionally, the Tax Code provides that taxing entities should derive a property's value from the price the property would demand in the open market. *See* TEX.TAX CODE § 1.04(7).[3] This codification comports with previously accepted methods for ap-

---

**1.** Gifford–Hill started out challenging the valuation, claiming that it was excessive. They abandoned this argument well after this litigation was under way. Gifford–Hill also contended that combining the surface and mineral valuations amounted to "double-taxation." This argument fails because the record reveals that the separate appraisers diligently avoided overlap. The company engaged to value the mineral estate presented Wise County with a valuation that explicitly excluded any value attributable to the surface estate.

**2.** *See* TEX.TAX CODE § 23.41(a). The Tax Code provides that:

> Land designated for agricultural use is appraised at its value based on the land's capacity to produce agricultural products. The value of land based on its capacity to produce agricultural products is determined by capitalizing the average net income the land would

have yielded under prudent management from production of agricultural products during the five years preceding the current year. However, if the value of land as determined by capitalization of average net income exceeds the market value of the land as determined by other generally accepted appraisal methods, the land shall be appraised by application of the other appraisal methods.

*Id.* *See also* TEX.TAX CODE § 23.51(2) (agricultural use includes raising and keeping livestock).

**3.** Sub-section 7 of § 1.04 of the Tax Code says that:

> "Market value" means the price at which a property would transfer for cash or its equivalent under prevailing market conditions if:
> (A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;

praising fair market value. *See Rowland v. City of Tyler*, 5 S.W.2d 756, 760 (Tex. Comm'n App.1928, judgm't adopted) (realty's fair market value derived from reasonable cash market value which a voluntary sale would yield). Additionally, any appraisal of fair market value must include valuations of the property's surface and mineral estates.

The Tax Code further specifies that "generally accepted appraisal techniques" must govern the appraisal process. A 1985 amendment to the Code amplified that requirement by providing that "each property shall be appraised based on the **individual characteristics** that affect the property's market value." *See* Tex.Tax Code § 23.01(b) (Supp.1991). The distinctive "individual characteristic" in this case is the extensive limestone deposits underlying the Wise County acreage. So we move to the central issue before the court; that is, to what extent should the limestone underlying Gifford–Hill's property affect Wise County's ad valorem tax rate on the 2500 acres.

### TAXING LIMESTONE AS "A MINERAL IN PLACE"

Section 1.04 of the Texas Tax Code states that real property subject to taxation includes "a mine or quarry" or "a mineral in place." The Tax Code further provides that minerals not under production may be taxed. Tex.Tax Code § 23.17.[4] If the limestone underlying the Wise County property is "a mineral in place" that is not under production, then it must be appraised and taxed at a rate relative to its market value. *See* Tex.Tax Code § 1.04(7).

The majority says that limestone is not "a mineral in place" subject to taxation. That holding turns on the court's conclusion that, as a matter of law, limestone is not a mineral within the ordinary and natural meaning of the word. This court previously has struggled with what the term "mineral" comprises. But this term's prior development was caused by circumstances peculiar to Texas' oil and gas law. The need to define the term arose from oil and gas conveyancing problems. *See Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 101 (Tex. 1984) (conveyance of oil, gas, and other minerals conveys all minerals within ordinary and natural meaning of word, which includes uranium but not limestone); *Reed v. Wylie*, 597 S.W.2d 743, 748 (Tex.1980) (conveyance of oil, gas, and other minerals did not convey lignite within 200 feet of the surface); *Acker v. Guinn*, 464 S.W.2d 348, 352–53 (Tex.1971) (conveyance of oil, gas, and other minerals did not convey near-surface iron ore); *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994, 995–96 (1949) (devise of mineral rights did not embrace limestone). The majority's opinion rightly recounts in footnote five, at 815, the policies that led the court to define this term, namely, the need for title certainty and the need to protect the interests of surface-estate-owners subject to an oil and gas conveyance. However, the policies pressed

---

(B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and

(C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

4. Tex.Tax Code § 23.17 reads:

Mineral Interest Not Being Produced: An interest in a mineral that may be removed by surface mining or quarrying from a deposit and that is not being produced is appraised at the price for which the interest would sell while the mineral is in place and not being produced. The appraised value is determined by applying a per acre value to the number of acres covered by the interest. The aggregate of the appraised value of the interest and the appraised value of all other interests that if not under separate ownership would constitute a fee simple estate in real property may not exceed the appraised value that would be placed on the fee estate if the interest in minerals were not owned separately. *Id.*

Commercially available limestone adds value to real property. Those who purchase and use land intending to profit from the minerals it contains should be subject to ad valorem taxes under § 23.17.

upon us by the conveyancing problems and the title uncertainty discussed in *Moser* do not apply with equal effect in ad valorem tax situations. I agree with *Moser*'s conclusion that the ordinary and natural meaning of the word mineral **in an oil and gas context** excludes limestone. But the particular context of that case compelled that conclusion. Applying *Moser*'s definition to a wholly separate area of law ignores the truism that legal definitions frequently achieve their meaning from the context in which they are applied rather than from generic understanding. A term's applicable definition for a particular area of the law should be shaped by the constitutional and statutory policies the state seeks to promote in that area.

In Texas, our tax policy, as revealed by the Texas Constitution and the Texas Tax Code, seeks to ensure the taxation of real property at a rate reasonably related to its true value. This court could further the constitutional and legislative will in this regard by including limestone as within the word mineral's ordinary and natural meaning **in the context of tax law.** The oil and gas policies that buttressed this court's previous definition of the word "mineral" do not support grafting the same definition onto tax law. By importing an oil and gas definition into the realm of taxation, the court has not simply applied precedent regarding what a mineral is as a matter of law. Instead, the court has created a new rule in a new context that contravenes this state's accepted tax policies.

The court's new rule has some serious ramifications. By using a definition from oil and gas to say that limestone is not taxable as a "mineral in place" as a matter of law, the court implicitly exempts from ad valorem taxation all other minerals exempted in oil and gas law, including the following: near-surface lignite, iron and coal, gravel, building stone, and surface shale. *See, e.g., Reed,* 597 S.W.2d at 747 (near surface lignite, iron and coal not minerals); *Heinatz,* 217 S.W.2d at 997 (build-

ing stone not a mineral); *Atwood v. Rodman,* 355 S.W.2d 206, 213 (Tex.Civ.App.—El Paso 1962, writ ref'd n.r.e.) (surface shale not a mineral); *Psencik v. Wessels,* 205 S.W.2d 658, 661 (Tex.Civ.App.—Austin 1947, writ ref'd) (sand and gravel not minerals). This result imposes a policy inconsistent with the Texas Constitution and the Texas Tax Code, for it may prevent a taxing authority from imposing an ad valorem tax genuinely derived from the real property's true value.

Texas' tax policy requires that, unless the legislative intent is ambiguous, courts should resolve questions regarding tax exemptions in favor of the taxing authority. *See Bullock v. National Bancshares Corp.,* 584 S.W.2d 268, 272 (Tex.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980). Resolving ambiguities in favor of the state is not a concept unique to Texas tax law. In a dispute between the state and a private citizen over the ownership of coal and lignite, this court ruled that any ambiguities concerning what minerals the state conveyed to a private citizen should be resolved in favor of the state. *See Schwarz v. State,* 703 S.W.2d 187, 189 (Tex.1986). We concluded in that case that the state retained all of a tract's coal and lignite and not just that coal and lignite within 200 feet of the surface (as would have been the result had the state not been a party). *Id.* Thus, when applying the ordinary and natural meaning of the term mineral to decide whether a particular substance is a mineral in place, we should resolve any ambiguities that arise in favor of the state. In the instant case, there is at least a facial ambiguity as to whether limestone should be considered a mineral when appraising real property in Texas and the court should have resolved this ambiguity in favor of the taxing authority.

### TAXING LIMESTONE AS "A MINE OR QUARRY"

Taxing "a mine or quarry" entails appraising only those minerals actually under production. The majority admits that Wise

County can use the authority provided under this section to appraise the limestone in any of Gifford–Hill's open quarries or mines. But the land's true value stems from its potential as a long-term source of limestone, not simply its present production levels. Nevertheless, the majority rests its solution on a modified "mine or quarry" classification. The majority's solution, while straining for compromise, has created a complicated method for arriving at a just ad valorem tax. The majority says that limestone is not a mineral for tax purposes. As noted above, this conclusion stems from the court's analogizing Texas' oil and gas law to Texas' tax law. This analogy fails because the parties' status and the governing policies fundamentally differ.

The majority's solution concludes that only limestone in a "quarry" should be taxed, while all other limestone, even though it adds value to Gifford–Hill's interest, should remain untaxed. This contravenes the policies underlying ad valorem taxation. For the principal goal of an ad valorem tax is to tax property at a level that reflects the property's true value.

The court further suggests that several other factors should figure into appraising limestone in a quarry, including "incomplete reclamation activities on prior production areas, mining or quarrying plans filed with state authorities, and reports from company officials and engineers." At 816. The court leaves the parties and the bench and bar completely in the dark, because there are no requirements that mining companies reclaim or restore limestone quarrys nor that they file quarrying plans with any state authority.[5]

The majority's compromise solution is neither equitable nor easy. It asserts that Wise County can tax any limestone in open quarries. But then it says that limestone in a quarry "may extend beyond the area

from which limestone is presently being produced." At 816. This will make the tax appraisal process quite difficult. To accurately appraise land on which an open quarry exists, counties will have to hire geologists to help them ascertain how far a limestone (or other mineral) vein extends beyond the open quarry. This prospect renders the majority's solution too burdensome. Ironically, the court's modified "quarry" standard could produce the same result as if we taxed limestone as a "mineral in place," because a geologist conceivably could conclude that limestone in a quarry "extend[s] beyond the area from which limestone is presently being produced" to all of Gifford–Hill's 2,500 acres.

## SUMMARY

Authorities should tax real property at a rate reasonably related to the true value of the land. Gifford–Hill argues that its ad valorem tax should be derived from the surface estate's value plus the tax value of any limestone actually removed. The majority agrees with Gifford–Hill's assessment, amending it only with the directive that limestone should be taxed by measuring the extent of currently open quarries. Wise County argues that the tax rate should be derived from an average of the expected annual rate of limestone production projected over a ten-year span. This approach would more accurately tie the ad valorem tax to the land's near-term productive value.

Wise County's method of taxation is both equitable and legal, and thus it is the best method. A number of factors support that conclusion. First, the great value of the limestone reserves underlying the 2500 acres is not in dispute. Second, Gifford–Hill acquired this land to exploit those reserves. Third, Wise County's failure to include the limestone in its 1985–86 tax appraisals did not preempt the county from

---

5. Gifford–Hill did not contest the $7.5 million valuation of the limestone reserves. One of the reasons may have been their unwillingness to disclose sensitive, confidential information of a proprietary nature to their competitors. Does the court now suggest that the legislature mandate that these "reports" now be filed with some state agency?

amending the appraisal process in 1987 to include the limestone's value. Fourth, dividing the appraisal process into two parts did not amount to "double-taxation." Fifth, all parties agree that the limestone must somehow figure into the tax rate. And finally, the Texas Constitution and the Texas Tax Code insist that the ad valorem tax rate reflect the property's true value, which in this case must include the limestone's collective value.

Permitting a tax on limestone as Wise County has suggested will not increase the tax liability of legitimate farmers. The agricultural use exemption protects them. That is, if real property is devoted primarily to an agricultural use, such as ranching or timber production, then the landowner will pay a significantly reduced tax rate, despite the presence of a valuable, unexploited mineral estate.

In conclusion, I disagree with the court's assertion that limestone is not a mineral under the TEX.TAX CODE § 1.04, because it is inconsistent with the policies undergirding our tax laws. In an act of inverted alchemy, the majority treats a limestone-rich property as if it possessed relatively little value, and thus permits Gifford–Hill to skirt its true ad valorem tax burden. This holding should also signal the legislature of the need to amend § 1.04 of the Tax Code so as to specify which minerals in place are taxable. I further disagree with the court's view on the taxing of limestone as "a mine or quarry," because the proffered method is too burdensome. I am of the opinion that the appraisal method proposed by Wise County is legal and equitable. Thus, I would affirm the judgment of the court of appeals.

MAUZY, DOGGETT and GAMMAGE, JJ., join this opinion.

1. Amicus curiae briefs submitted by Texas Aggregate and Concrete Association and Mitchell Energy Corporation and North Texas Oil & Gas Association.

2. Amicus curiae brief submitted by Enserch Exploration, Inc.

3. In their amicus curiae brief, Mitchell Energy Corporation and North Texas Oil & Gas Association state that they "strongly encouraged Wise County Appraisal District to take the action of

ON MOTION FOR REHEARING

HIGHTOWER, Justice.

In its motion for rehearing, Wise County complains, among other things, that this Court considered issues and arguments injected into the case by amici curiae and other non-parties which were not presented to lower courts. The dissent on rehearing raises issues and arguments which were not presented to lower courts. First, the issue concerning potential increased tax liability of farmers and ranchers was first raised in several amicus briefs [1] but was injected into the case by the dissent. Second, the issue concerning potential applicability of this opinion to lignite holdings was raised specifically in an amicus brief [2] and injected into the case by the dissent. Third, Wise County and the dissent failed to mention that Wise County was approached and encouraged to appraise Gifford–Hill's limestone acreage by Mitchell Energy Corporation and North Texas Oil & Gas Association.[3] The motion for rehearing is granted in part [4] and overruled in part.

I.

Contrary to the dissent's rhetoric, the Court's legitimate concern about subjecting thousands of unsuspecting ranchers and farmers—ordinary taxpayers—to increased tax liability is not "unjustified." At 826 (Tex.1992) (Gonzalez, J., dissenting on rehearing). Applying the dissent's reasoning, if limestone is a "mineral in place," it would be appraised and taxed at a rate relative to its market value. Pursuant to section 23.17 of the Tax Code, a "mineral in

which Gifford–Hill now complains...." Brief of Mitchell Energy Corporation and North Texas Oil & Gas Association as Amicus Curiae at 8.

4. The motion for rehearing is granted only concerning the award of court costs. The judgment is amended to reflect that each party shall pay their own costs in this Court and in the court of appeals. Otherwise, the motion for rehearing is overruled.

place" is "[a]n interest in a mineral ... that is not being produced [and] is appraised at the price for which the interest would sell while the mineral is in place and not being produced." Tex.Tax Code § 23.-17. Under the dissent's analysis, the limestone underlying the property of a rancher or farmer and not being produced would be valued and taxed as a "mineral in place."[5] However, since neither the agricultural use nor qualified open-space land valuations apply to the "appraisal of minerals or subsurface rights to minerals," the farmer or rancher would not be protected. *See* Tex. Tax Code § 23.52(f).

■ The dissent attempts to avoid this egregious result by asserting that whether limestone as a "mineral in place" actually is valued and taxed depends upon the identity of the landowner and the land's use. However, once limestone is recognized as a "mineral in place," even if it is not under production, it would be appraised and taxed at a rate relative to its market value. Unless property is exempt by law, taxing units may not arbitrarily determine not to tax otherwise taxable property based upon the identity of the landowner and the land's use. *See generally* Tex. Const. art. VIII, § 1; Tex.Tax Code § 11.01.[6]

The dissent states "As long as farmers and ranchers abstain from mineral production, they will benefit fully from the agricultural use exemption." At 826 (Tex.1992) (Gonzalez, J., dissenting on rehearing). Farmers and ranchers will benefit as they always have from the agricultural use ex-

emption for the surface of their land. However, under the dissent's approach, minerals and minerals in place are effectively severed from the surface for tax purposes and valued and taxed as separate estates. Thus, farmers and ranchers would not benefit from the agricultural use exemption for the minerals underlying their property.

■ The dissent also asserts that section 23.52(f), which provides that the agricultural use and qualified open-space land valuations do not apply to the appraisal of minerals or subsurface rights to minerals, "only applies when the minerals have value; that is, commercial mineral production is anticipated or under way." At 826 (Tex. 1992) (Gonzalez, J., dissenting on rehearing).[7] In essence, the dissent would act as a legislative body and engraft an exception to section 23.52(f) which does not otherwise exist. The dissent's "amended" section 23.-52(f) now provides that the agricultural use and qualified open-space land valuations are inapplicable to the appraisal of minerals or subsurface rights to minerals only when commercial mineral production is anticipated or under way. However, what criteria would the dissent utilize in determining when "commercial mineral production is anticipated or under way?" How would the dissent determine when mineral production rises to the level of "commercial production?" How would the dissent make the subjective determination of when commercial mineral production is "anticipated?" Obviously, the dissent's "amended

5. For example, it is undisputed that Gifford–Hill purchased most of its Wise County property containing limestone deposits for $6,000–$7,000 per acre. Obviously, Gifford–Hill purchased the property from someone while the limestone was in place and not being produced. Consequently, under the dissent's theory that limestone is a "mineral in place," the farmer or rancher who owns property containing limestone deposits in Wise County which is not being produced could have his limestone deposits appraised at between $6,000–$7,000 per acre.

6. Consequently, applying the dissent's reasoning, Wise County would be required to reap-

praise all of the land in Wise County to consider the value of limestone as a mineral or mineral in place.

7. However, the dissent concedes that the "legislative history reveals that ambiguity permeated the question of when and how to apply section 23.17. Some legislators, including the bill's sponsor, interpreted the section as only allowing taxation of minerals in place if production had already begun on the land. Others believed that production was not a necessary prerequisite to taxation." At 828 (Tex.1992) (Gonzalez, J., dissenting on rehearing).

section 23.52(f)" would be impossible to apply and undoubtedly would generate unnecessary litigation.

## II.

The determination of the extent of the quarry is not just a value issue. Wise County appraised the surface of Gifford–Hill's 2500 acres at $800 per acre and the "limestone reserves" beneath the surface at $7.5 million. Gifford–Hill argued, among other things, that limestone is not a mineral and could not be appraised and taxed separately from the surface. However, if limestone is a mineral and could be appraised and taxed separately from the surface, Gifford–Hill conceded that the value of the limestone beneath the surface is $7.5 million. When this Court determined that limestone is not a "mineral" or a "mineral in place" for ad valorem tax purposes, the $7.5 million value of the limestone became meaningless. The argument of Wise County and the dissent—that since this Court held that a portion of Gifford–Hill's limestone constituted a quarry, it is worth $7.5 million whether the quarry consists of 10 acres or 100 acres or 1,000 acres—defies reality and common sense.

The existence of a fact issue concerning the extent of Gifford–Hill's quarry was raised by Gifford–Hill and Wise County in their summary judgment pleadings. In its Amended Motion for Summary Judgment and Response to Defendants' Motion for Partial Summary Judgment, Gifford–Hill prayed that "summary judgment be granted and the Court remand this matter in part to the A.R.B. for appraisal of that portion of Gifford–Hill's property, if any, which is a 'mine' or 'quarry' in accordance with the law...." On remand, the trial court will determine that portion or portions of Gifford–Hill's property which constitute "quarry" and also determine the value of the quarry. The trial court is not bound by Gifford–Hill's "concession" that the value of the limestone beneath the surface is $7.5 million.

## III.

In *Heinatz v. Allen,* 147 Tex. 512, 217 S.W.2d 994 (1949), which involved the construction of the terms of a will, this Court held that "substances such as sand, gravel and limestone are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value...." *Id.,* 217 S.W.2d at 997. In *Moser v. U.S. Steel Corp.,* 676 S.W.2d 99, 102 (Tex.1984), this Court held that limestone belongs to the surface estate as a matter of law. Although *Heinatz v. Allen* and *Moser v. U.S. Steel Corp.* are "conveyance" cases, there is no compelling reason to establish a different definition of "mineral" for ad valorem tax purposes.

Wise County's argument that limestone has always been a mineral under Texas law is unpersuasive. In fact, Wise County does not refer to a single authority which holds that limestone is a mineral.[8]

## IV.

The Court did not "find" in footnote 4 or elsewhere that the open space five-year rollback tax would recapture the taxes lost over the 30 year life of Gifford–Hill's property. Contrary to the dissent's arguments, the Court was not (and is not) advocating the idea of tax recapture but was merely noting the existence of the additional tax imposed when use of qualified open-space land changes. A careful

---

**8.** The dissent states that the legislative history of section 23.17 supports the position that limestone is a "mineral in place." This argument is equally unpersuasive. The legislative history indicates the existence of substantial uncertainty concerning when and how to apply section 23.17. Although the lengthy portions of the legislative history specifically mentioned iron-ore, lignite, coal, gravel and caliche, the discussions never specifically mentioned limestone. In fact, there was disagreement and uncertainty concerning whether production was a necessary prerequisite to taxation of minerals in place.

reading of footnote 4 will reveal that the Court was responding to Wise County's argument that if Gifford–Hill's limestone was not valued and taxed immediately, the land would vanish and leave one huge hole and no tax revenue. Contrary to Wise County's argument, Gifford–Hill's quarry will expand resulting in a change of use of (and the loss of its open space land valuation for) that portion of the property. Wise County can "recapture" the tax on the difference between the productivity value and the market value for each of the 5 years preceding the year the change of use occurs plus 7% interest. For example, if the quarry expanded from 50 acres to 100 acres, Wise County could "recapture" the tax on the additional 50 acres of quarry for the difference between the productivity value ($57 per acre) and the market value ($6,000 per acre) for each of the preceding 5 years plus interest.

Dissenting opinion on rehearing by GONZALEZ, J., joined by MAUZY and GAMMAGE, JJ.

DOGGETT, J., not sitting.

GONZALEZ, Justice, dissenting.

In its motion for rehearing, Wise County alleges, among other things, that the Court erred: (1) in reversing the judgment of the court of appeals on grounds which were never presented to the trial court or the court of appeals; (2) in remanding this case to the trial court, because Gifford–Hill's pleadings did not support the relief granted; (3) in stating that Wise County's appraisal method would subject unsuspecting farmers to increased tax liability; (4) in holding that limestone is not a mineral; (5) in suggesting that all 2500 acres were taxed by Wise County for its limestone because there is no evidence of same; and (6) in noting at footnote four that the open space five-year rollback (§ 23.55 of the Tax Code) will recapture the taxes lost over the 30–year life of Gifford–Hill's property. I agree with these assertions. For these reasons and those discussed in the earlier dissenting opinion, I would grant the motion for rehearing.

## UNASSIGNED ERROR

Gifford–Hill's argument all along has been that it was entitled to a summary judgment because limestone should not be taxed at all. It never asserted that too many acres were included; nor did it ever assert that a "fact issue exists regarding the extent of Gifford–Hill's quarry," at 827, the very basis on which the Court reversed and remanded the case to the trial court. This argument was introduced for the first time while the case was on appeal to this court. Thus, in my view, it was improper for the Court to reverse the judgment of the court of appeals on an argument not presented to the lower courts. Even though in *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970), we allowed a broad point of error to preserve all potential challenges to a summary judgment, we did not dispense with the fundamental requirement that grounds for reversal be expressly presented to the trial court in order for them to be considered by the appellate court. *See Combs v. Fantastic Homes, Inc.*, 584 S.W.2d 340, 343 (Tex.Civ. App.—Dallas), *writ ref'd n.r.e.*, 596 S.W.2d 502 (Tex.1979).

## LACK OF PLEADINGS

Wise County argues in its motion for rehearing that this Court improperly reversed and remanded this case to the trial court because Gifford–Hill had no pleadings to support such an action. This argument has substantial merit. The extent of the quarry is a value issue, and Gifford–Hill abandoned its pleadings that challenged the property's value. The parties can relitigate the case on the number of acres comprising the quarry until the cows come home, but the value of that acreage has already been determined to be $7.5 million. The only way around this dilemma is for the Court to take the unprecedented step of reinstating Gifford–Hill's pleading

which challenged value and which they voluntarily abandoned.

## NO INCREASED TAX LIABILITY TO FARMERS

The concern expressed by the Court in footnote eight that Wise County's appraisal method would subject unsuspecting farmers and ranchers to increased tax liability is unjustified. As long as farmers and ranchers abstain from mineral production, they will benefit fully from the agricultural use exemption. TEX.TAX CODE § 23.41 (1982 & Supp.1992). Further, for those fully devoted to the business of farming or ranching, existing limestone on their property has no value and therefore is not (and should not be) taxed. If, however, the farmer changed the primary use of the land from farming to quarrying, then the limestone would have taxable value and should be taxed as a mineral. As the name implies, the agricultural use exemption focuses on the landowner's use of his property. For obvious reasons, companies engaged in stripmining land should not be able to employ the agricultural use exemption to obtain lower tax rates on their mineral estates. The Court's opinion, however, permits just such a result.

Section 23.52 of the Texas Tax Code provides that the agricultural use exemption cannot be awarded to minerals. But this only applies when the minerals have value; that is, when commercial mineral production is anticipated or under way. Thus, a farmer who seeks to preserve his or her open space land may freely take advantage of the agricultural use exemption, though the land may contain limestone.

As pointed out by an amicus brief, permitting Gifford–Hill an agricultural use exemption on all the acreage in question reshapes the application of the exemption. The amicus brief also identifies a potential equal protection problem, noting that allowing an exemption for limestone in place while taxing oil and gas in place is a nonuniform and thus impermissible method of taxation. If a mining company owns a tract's surface estate and its mineral estate containing limestone, then the company could employ the agriculture use exemption to exempt both estates from standard ad valorem taxes. Under the Court's cumbersome test, Gifford–Hill may only have to pay taxes on the limestone it produces plus a tax on the assessed value of limestone contained in and extending from the open quarry. The rest of the limestone would be covered by the agricultural use exemption.

## PROBLEMS WITH HOLDING THAT LIMESTONE IS NOT A MINERAL

Wise County asserts that the cases relied on by the Court to hold that limestone is not a mineral "are wholly inapposite to the concept of ad valorem appraisals as set forth in the Property Tax Code, to Government's right to tax property, and to the public's Constitutional right to equal and uniform taxation." Likewise, another amicus brief filed supporting Wise County's position noted that *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994, 995–96 (1949), relied on by the Court, held that limestone belonged to the surface estate because extraction of it would otherwise destroy the surface estate. But *Heinatz* and its progeny addressed the ownership of limestone and other near-surface minerals and not whether limestone was in fact a mineral subject to taxation.

Section 23.17 of the Texas Tax Code specifically addresses the appraisal of "minerals" that may be removed by surface mining or quarrying; this excludes oil and gas. *See* TEX.TAX CODE § 23.17 (1982). Thus, this section could only refer to quarryable minerals such as limestone, lignite and iron ore. The Court held, however, that the ordinary and natural meaning of the term mineral, as defined in *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99 (Tex.1984), did not include limestone. At 817. As I previously noted, applying *Moser's* definition of the word "mineral" to Texas tax law means

that not only is limestone not a taxable mineral, but neither is near-surface lignite, iron, coal, gravel, building stone, and surface shale. *Moser*, 676 S.W.2d at 102. Contrary to the Court's conclusion, I urge that section 23.17, which provides for the taxation of minerals in place, include limestone such as that for which Gifford–Hill sought an exemption. The legislative history of section 23.17 supports such a reading. As the following paragraphs reveal, all who participated in the legislative debate over this provision used as examples of taxable minerals, substances that the Court's ordinary and natural meaning test would exclude from taxation.

The Texas Legislature conducted hearings concerning section 23.17 in 1977. These hearings make clear that the Legislature did not define mineral under the Tax Code in the sense of *Moser's* "ordinary and natural meaning" test. Whereas *Moser's* test would exclude near surface iron ore, lignite, gravel, and caliche, the legislative debate over this provision clearly contemplated the inclusion of these minerals as taxable under section 23.17. Senator Jones introduced Senate Bill 815, which eventually became section 23.17 of the Tax Code, by stating that the section's purpose was:

> an attempt to place the market value valuation on non-producing minerals in place and it simply provides that if the tax assessor is levying taxes on non-producing minerals, that he would treat minerals the same, across the board whether they are severed ... or owned in fee.

Senator Jones also stated that the provision applied to all minerals in place and was "not related to any particular type of mineral." Mr. Howard Jensen, Vice President and General Counsel of Lone Star Steel, testified in support of the bill noting that he hoped the provision would improve the method by which his iron-ore rich land was taxed. Mr. Sam Winters, representing Texas Utilities, then testified concerning the proper way to tax lignite in place. He believed this legislation would "alleviate presently existing inequities in the valuation and taxation of non-producing deposits of minerals such as lignite coal."

On the same day that the Senate heard SB 815, the House Ways and Means Committee heard the companion bill, House Bill 1866. Messrs. Jensen and Winters testified again regarding their iron-ore and lignite interests, and Rep. Davis spoke in support of the provision. When asked whether an entire mineral-rich tract of land became subject to taxation once production started, Rep. Jones replied that upon production, the land would be taxed at "the value of the mineral capable of being produced from that tract." HB 1866 was then passed to the full House, where Rep. Olsen presented it. Argument ensued as to whether subsurface minerals should be taxed. During the debate, Rep. Olsen noted that "we intended only to talk about minerals in place such as lignite, coal and other things that dealt with quarrying and surface mining." The debate then addressed whether minerals in place, upon which no production has begun, should be taxed under section 23.17. As to whether farmland containing lignite should be taxed as having a mineral in place, Rep. Olsen said: "It hasn't been opened. It's a mineral in place. And officially what the bill does is to clarify the law."

The debate then moved to an exchange between Reps. Wilson and Olsen, which further indicated that substances such as gravel, lignite, and caliche could be considered minerals in place subject to taxation under section 23.17.

> Wilson: Well, alright, let's just move away from oil and gas then. The only tax on—let's use gravel, that's a mineral, isn't it?
>
> Olsen: Alright.
>
> Wilson: Gravel.
>
> Olsen: John, let me tell you, my amendment, as far as oil and gas is concerned, there's been some concern about some tax questions and other things and that's what—the amendment gets away from

oil and gas, we're talking about minerals such as coal, lignite, caliche, and that kind of stuff.

Wilson: Alright, well, the people that go out and they know that the lignite's there, Mr. Olsen, and they buy the land or lease it up and have those reserves which are of some value to them. And what you're really saying is that the people of that district cannot assess what isn't a known value of the district. Isn't that what your bill really says?

Olsen: Yeah, but essentially, John, is that what you're saying is, the ground hasn't been opened.

Representative Olsen later asserted that you could not tax minerals in place unless production had begun on the land; Reps. Wilson and Gilley disagreed with him.

This legislative history reveals that ambiguity permeated the question of when and how to apply section 23.17. Some legislators, including the bill's sponsor, interpreted the section as only allowing taxation of minerals in place if production had already begun on the land. Others believed that production was not a necessary prerequisite to taxation. This ambiguity does not affect the case before us because Gifford–Hill has already begun production. However, the debate contained no ambiguity as to what substances the term mineral comprised. Thus, the Court's opinion and judgment in this case plainly defeats the intended legislative scope of section 23.17 by precluding the taxation of limestone as a mineral in place.

If the Court needed a statutory definition of mineral, it need only have turned to section 75.001(a)(1) of the Texas Property Code, which defines a mineral as follows:

"Mineral" means oil, gas, uranium, sulphur, lignite, coal, and any other substance that is ordinarily and naturally considered a mineral in this state, regardless of the depth at which the oil, gas, uranium, sulphur, lignite, coal, or other substance is found.

§ 75.001(a)(1) Tex.Prop.Code (Supp.1992). This definition of mineral obviously differs

from the *Moser* holding, even though it also includes all substances "ordinarily and naturally considered" minerals, because its definition embraces all lignite, coal, and iron-ore, regardless of the depth at which they may be found. In *Moser*, the court held that near-surface lignite, coal, and iron-ore are not minerals as a matter of law. 676 S.W.2d at 102. The conflict between the Texas Property Code's definition of "mineral" and the Court's definition forebodes further litigation to clarify what the Court's definition means.

Finally, the State Property Tax Board, the enforcing authority for our tax code, believed limestone to be a taxable mineral. On July 17, 1987, the assistant director of the State Property Tax Board's Valuation Division wrote the Wise County Appraisal District's chief appraiser and said that, under section 1.04 of the Texas Tax Code, *"[l]imestone falls under any definition of mineral that I could find.... Both the United States Geological Survey and the Texas Bureau of Economic Geology consider limestone to be a mineral. The Department of Interior's Bureau of Mines treats limestone as a mineral"* as does the Bureau of Land Management. (emphasis added).

The letter distinguished the Texas Supreme Court's treatment of limestone in its oil and gas jurisprudence by noting that "in all such cases the issue has been one of ownership and title, never of exemption from taxation." The assistant director then included the following paragraph:

While legally taxable, nonfuel mineral reserves have rarely been assessed in Texas in the past. Possibly a perception that no real incremental value to the tax rolls was possible fostered this practice. This would certainly not be the case in Wise County. The limestone reserve there is viewed by experts as one of the *largest and most high-quality blocks in the state, and production of this kind of mineral in Wise is significant even in national rankings.*

(emphasis added). The letter concluded by asserting that the State Property Tax

Board believed limestone was taxable as a mineral. This is consistent with the legislative history of section 23.17 of the Tax Code. The Court has ignored that section's legislative history, as well as the views of the State's tax enforcement authority, the collective wisdom of those entities engaged in mineral analysis, and instead has exempted from taxation one of the most valuable limestone deposits in Texas, if not the nation.

## FIVE–YEAR ROLLBACK—RECAPTURE OF TAXES

In footnote four of the majority opinion, the Court noted that I had failed to consider or even mention that additional taxes are imposed when use of qualified land changes. TEX.TAX.CODE § 23.55(a) (1982 & Supp.1992). Traditionally, this section has been used to recapture lost taxes when the use of the land goes from pasture land to a higher or better use, such as residential or commercial, thus increasing the land's value. But in this case the exact opposite is true. Stripmining does not increase the value of the land. After Gifford–Hill finishes its operation, all it will leave behind is a deep hole with little utility. Even if this were not the case, the statute facilitates the recapture of taxes for only the five preceding years, and Gifford–Hill has more than thirty years of limestone reserves.

There are other problems with the Court's simplistic idea of tax recapture. What are the criteria for a "change of use" that would provoke a rollback of taxes? What if the cattle continue to graze on whatever sparse vegetation clings to life in the pit created by Gifford–Hill? Has there been a change of use? Is change of use determined on an acre by acre basis? These unanswered questions undoubtedly will generate more litigation.

## SUMMARY

The Court reached its result by insisting on using a definition of the word "mineral" developed in the peculiar contexts of oil and gas conveyancing law. As noted in the previous dissent, this holding now will cause near-surface lignite to be considered as something other than a mineral under Texas tax law. An amicus brief noted that its lignite holdings currently were being taxed as minerals in place. Under the Court's holding, the amicus brief argues that it should not have to pay taxes on its lignite holdings and that it can properly refuse to pay. Under the Court's holding, this goes for every other mineral owner in the state that may be paying taxes on lignite, near-surface coal, or any other substance defined in oil and gas law as not a mineral within "the ordinary and natural meaning of the term." The record also clearly shows that the State Property Tax Board, the authority in charge of enforcing the tax code, believed Wise County was correct in subjecting Gifford–Hill's limestone to an ad valorem tax. Perhaps most significantly, the legislative history of section 23.17 clearly contemplated the taxation of minerals beyond those encompassed by the *Moser* test. Likewise, section 75.-001(a)(1) of the Texas Property Code conflicts with the Court's interpretation of the word mineral, and this inevitably will cause more litigation in this area.

The Court's conclusion that limestone is not a mineral differs from the assessments of the State Property Tax Board, the United States Geological Survey, the Texas Bureau of Economic Geology, the Department of Interior's Bureau of Mines, and the Bureau of Land Management, all of which, the record indicates, classify limestone as a mineral. Unless the legislature corrects the confusion that this unfortunate opinion creates, namely, the significant conflict between this Court's definition of a mineral and what other expert authorities believe a mineral to be, today's holding will doubtlessly spawn protracted litigation over which "minerals" in Texas are subject to ad valorem taxation. All of these problems could have been avoided by affirming the judgment of the court of appeals. Since the Court refuses this course of action, the reality is that this is not the end of the

story, and we will have to revisit this issue somewhere down the line.

MAUZY and GAMMAGE, JJ., join this opinion.