*675 BILL MEIER, Justice,
dissenting.
The Owners’ use of the saltwater disposal wells generates taxable‘value as interests in land under property code section 1.04(2)(F), but the interests should not have been appraised and taxed separately from the fee simple estates of which the wells are included. Because the majority concludes otherwise, I respectfully dissent.
“Ordinarily one’s entire interest in a particular tract of land should be assessed for tax purposes as a unit. The assessor should not divide said interest into various portions and assess the same separately.” Victory v. Hinson, 71 S.W.2d 365, 367 (Tex. Civ. App.-Waco 1934, no writ); see Humble Oil & Ref. Co. v. West, 508 S.W.2d 812, 815 (Tex. 1974) (observing that ownership of land in fee simple includes not only the surface and mineral estates but also “the matrix of the underlying earth, i.e., the reservoir storage space”). But this approach is by no means absolute; separate assessments of different aspects of the same property are permissible under certain circumstances. See Matagorda Cty. Appraisal Dist. v. Coastal Liquids Partners, L.P., 165 S.W.3d 329, 333-34 (Tex. 2005); Gifford-Hill & Co. v. Wise Cty. Appraisal Dist., 827 S.W.2d 811, 816 (Tex. 1991); see also Tex. Tax Code Ann. § 25.02 (West 2015) (requiring appraisal districts to list separately the appraised value of “a separately taxable estate or interest in land”). Still, “it is difficult to state a precise rule about what property can be separately assessed because of the multitude of possible circumstances and the hundreds of Tax Code provisions that may govern them.” Coastal Liquids, 165 S.W.3d at 334. “Perhaps the most that can be said is that each property should be appraised ‘based upon the individual characteristics that affect the property’s market valúe.’ ” Id.; see Tex. Tax Code Ann. § 23.01(b) (West Supp. 2016).
The Appraisal District posits that it was justified in separately appraising and taxing the saltwater disposal wells because the surface and subsurface estates of the properties “are used for different purposes.” The argument appears to simply echo the supreme court’s reasoning in Coastal Liquids that the manmade salt dome storage caverns at issue there could be appraised and taxed separately as improvements because “they were and had been in active commercial use, separate and apart from whatever uses were taking place on the surface above.” 165 S.W.3d at 333. A closer look at the observation reveals that while it might provide guidance in some circumstances involving subsurface activity, it is not susceptible to automatic application in all.
The supreme court’s use/non-use or active commercial use/awaiting future development dichotomy stemmed from its decision in Gifford-Hill, in which the court concluded that unlike limestone that was under production as part of a quarry, non-producing subsurface limestone could not be appraised separately from the land immediately above it. 827 S.W.2d at 815-16. At the core of the distinction were money and equity, as the limestone that was part of a producing quarry had been appraised at $3,000 per acre, but the limestone that was not under production was taxed at the considerably less open-space value of $56 per acre. Id. at 813. The financial implications were evident: “[A] blanket rule taxing limestone separately ‘would subject thousands of unsuspecting farmers and ranchers to increased tax liability and frustrate the Constitution’s intent “[t]o promote the preservation of open space land ... devoted to farm or ranch purposes.” ’ ” Coastal Liquids, 165 S.W.3d at 333. The decision to separately appraise and tax some but not all of the limestone thus *676 encompassed various financial, constitutional, and equitable concerns.
The same concerns are not even remotely present in this case. There is no threat of increased tax liability to unassuming landowners, nor are there any underlying equitable or constitutional concerns that favor separate taxation. And unlike in Coastal Liquids, the Owners are injecting water into thé naturally occurring saltwater wells solely to dispose of it, not to store it. If there is any “active commercial use” taking place, it is at the surface, where the Owners are exercising their “right to inject,” not underground, where the water is merely combined with the earth for all eternity—not so unlike pex-petually undisturbed limestone located under the surface. Accordingly, the Gifford-HiU use/ non-use dichotomy is inapposite under the facts of this case.[1]
The Appraisal District alternatively contends that separate appraisals were permitted because the values of the surface and subsurface “are determined by different methods,” but mathematical convenience alone does not justify a separate appraisal. The Appraisal District and its consulting firm are fully capable of considering the income derived from the saltwater injection wells as a factor in accurately valuing each of the fee simple estates. See Houston R.E. Income Props. XV, Ltd. v. Waller Cty. Appraisal Dist., 123 S.W.3d 859, 861-63 (Tex. App.-Houston [1st Dist.] 2003, no pet.) (reasoning that use of more than one appraisal method was permitted, so long as “the appraisal method as a whole constitutes relevant and reliable evidence of market value”); cf. Missouri-Kansas-Texas R.R. Co. v. City of Dallas, 623 S.W.2d 296, 299-301 (Tex. 1981) (observing that in determining railroad value, “[n]o one criteria is usually solely determinative”).
The individual characteristics of the properties here do not warrant separate appraisals and taxation. See Tex. Tax Code Ann. § 23.01(b). Because the saltwater disposal wells should have been taxed as part of the fee simple estates of which they are included, I dissent from the majority opinion concluding otherwise.
GARDNER and SUDDERTH, JJ„ join.

. But this is not to say that the Gifford-HiU framework would be inapposite under a different scenario, one, for instance, in which the Appraisal District sought to tax an unassuming adjoining landowner—whose subsurface estate is geographically indistinguishable from the Owners' but who does not derive income by injecting it with saltwater—like it taxes the Owners.