**DESTEC PROPERTIES LIMITED PARTNERSHIP, Appellant,**

v.

**FREESTONE CENTRAL APPRAISAL DISTRICT, et al., Appellees.**

No. 10–98–033–CV.

Court of Appeals of Texas, Waco.

Aug. 31, 1999.

Rehearing Overruled Nov. 24, 1999.

---

Popp & Ikard LLP, William Ikard, William W. Kilgarlin, Julie D. Ashton, Austin, for appellant.

Linebarger Heard Goggan Blair Graham Pena, Russell R. Graham, James R. Evans, Jr., Austin, Baker & Botts, L.L.P., Macey Reasoner Stokes, Michael L. Calhoon, Houston, McGinnis, Lochridge & Kilgore, L.L.P., C. Morris Davis, John R. Breihan, Patricia D. Pope, Austin, for appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice CUMMINGS(Retired).

## O P I N I O N

VANCE, Justice.

This ad valorem tax appeal presents two issues: whether the trial judge followed the "law of the case," and whether the tax code allows an overriding royalty interest to be valued as an "income stream."

Four parties make up the list of players:

- Destec Properties, L.P. (Destec), the appellant, owner of an overriding royalty interest in certain acreage in Freestone County;

- the Freestone County Central Appraisal District (District), an appellee, a governmental body created by the tax code with the responsibility of de-

termining the taxability and valuation of property in Freestone County;[1]

- Houston Lighting & Power Company (HL & P), an appellee, owner of an overriding royalty interest in substantially the same acreage as that owned by Destec; and
- Northwestern Resources Company (NWR), an appellee, operator of the lignite mine that includes part of the acreage in which Destec and HL & P own overriding royalty interests.

## HISTORY OF THE LITIGATION

In the late 1970s, Dow Chemical Company acquired rights to coal and lignite in approximately 12,000 acres in Freestone and Leon Counties. In August 1979, it assigned certain coal and lignite leases to Houston Lighting & Power Company (HL & P). Destec succeeded to Dow's rights under the assignment.

For several years, the District assessed ad valorem taxes on the property against Utility Fuels, Inc. (UFI), an entity affiliated with HL & P to which HL & P had assigned certain mining rights. In 1992, HL & P contested the District's appraisal method, and as a result the District assessed the taxable interest to Destec. Destec objected to the assessment and, after it completed the administrative review process, filed suit in the District Court.[2] In 1993, the trial court granted Destec's motion for summary judgment, declaring that lignite is not a "mineral in place" and that Destec's interest was not taxable as real property or as an interest in real property. We reversed the court's determination that Destec had no taxable interest in the property. *Freestone–Central Appraisal Dist. v. Destec Properties, L.P.,* 10–94–017–CV (Tex.App.—Waco June 29, 1994) (not designated for publication).

In October 1997, the case was tried to a jury which made determinations as to the extent of the mine and the value of the property both inside and outside of the mine. The court rendered judgment that:

(1) Destec was the owner of a taxable overriding royalty interest in the non-producing property *and* the producing property;

(2) HL & P's overriding royalty interest had no taxable value and was properly omitted from the District's appraisal roll.

Based on the jury's findings, the judgment declared the value of Destec's interest for all the tax years in question.

## THE ISSUES

Destec brings two issues for review. First, whether the producing property is properly taxable to Destec. Second, whether HL & P's interest has no taxable value.

LAW OF THE CASE

■ As stated above, this is our second bite at the apple. In the first appeal by the District, we reversed a summary judgment in which the trial court had determined that Destec had no taxable interest in the property.[3] *See id.* There, we stated that "[a]n overriding royalty interest is an interest in land." *Id.* slip op. at 9. We further stated:

[W]e cannot agree with the trial court that no interest in "real property" was reserved by Dow, Destec's predecessor. Because we find that Destec owns an estate or interest in land, we cannot affirm the summary judgment. *See* Tex. Tax Code Ann. § 1.04(2).... Having made an initial determination that the agreement reserved some interest in "real property," we need not reach the question of whether lignite is a "mineral

---

1. Tex. Tax Code Ann. § 6.01 (Vernon 1992).

2. NWR also sued the District in 1992. Its lawsuit was consolidated with Destec's lawsuit in 1996.

3. Both our original Opinion and our Opinion Denying Motion for Rehearing were unpublished. See Appendix.

in place" or whether Destec owns an interest in a "mine or quarry."

*Id.,* slip op. at 9–10.

Destec quotes our opinion and argues that the "law of the case" mandates that its overriding royalty interest is an "interest in land" and therefore cannot be an interest in a mine or quarry under the Tax Code. Tex. Tax Code Ann. § 1.04(2) (Vernon 1992).[4] It misinterprets our prior opinion. We did not reach the question of how the lignite should be classified under the Tax Code. *Freestone–Central Appraisal Dist.,* 10–94–017–CV, slip op. at 9–10. Furthermore, on rehearing we specifically addressed Destec's misconception that our holding equated an "interest in land" with a "so-called 'fee tract.' " We explicitly stated: "The 'interest in land' Dow (Destec) reserved by the agreement is the overriding royalty interest in the lignite reserves." *Freestone–Central Appraisal Dist. v. Destec Properties, L.P.,* 10–94–017–CV, slip. op. at 1 (Tex.App.—Waco September 21, 1994) (opinion on reh'g) (not designated for publication).

Our original opinion in Cause No. 10–94–017–CV rejected Destec's assertion that its overriding royalty interest in the lignite was a non-taxable "income stream." *Freestone–Central Appraisal Dist,* 10–94–017–CV, slip op. at 4–5. Although our words might have been more artfully chosen, we did not determine that Destec's interest was exclusively an "interest in land" under section 1.04(2)(A) of the Tax Code, so as to prevent the court and jury from determining that the interest was another type of taxable "real property." Tex. Tax Code Ann. § 1.04(2). Thus, we reject the proposition advanced by Destec's first issue.

VALUATION

■ Destec's second issue is more troublesome. It asserts the trial court erred in holding that HL & P's overriding royalty interest has no taxable value. It is undisputed that HL & P owns an overriding royalty interest in approximately the same acreage as Destec. Thus, based on our earlier decision, HL & P owns an interest in "real property" and, under the jury's findings, an interest in a mine. However, the court found that the interest has no taxable value. Destec questions whether this is permitted by the Tax Code.

The court's charge asked the jury to make several findings with respect to the lignite reserves in question. First, the jury was asked to find the extent of the lignite mine. The jury found that the mine consists of "the tonnage and acreage associated with the pits where lignite is being extracted, the land adjoining those pits which is being cleared and dewatered prior to lignite being extracted, and the area of reclamation after lignite has been extracted from the pits."

Next, the jury found the market value "of the lignite reserves under Northwestern's leases within the Jewett mine" for each tax year from 1992 to 1997. The jury found market values ranging from $11,357,000 in 1997 to $22,475,000 in 1993. The jury also found the value of "HL & P or Destec's interest in lignite reserves under the 'other' leases within the Jewett mine" for each relevant tax year.[5] The values range from $12,607,000 in 1992 to $27,350,000 in 1997. The jury then determined, for the tax years in dispute, "the total market value of an acre of land in Freestone County that contains lignite in place and not being produced." The jury's answers ranged from $550 an acre in 1993

---

**4.** The Property Tax Code provides for taxation of "real property." Section 1.04 of the code provides, in pertinent part: "(2) 'Real Property' means: (A) land; (B) an improvement; (C) a mine or quarry; (D) a mineral in place; (E) standing timber; or (F) an estate or interest, other than a mortgage or deed of trust creat-

ing a lien on property or an interest securing payment or performance of an obligation, in a property enumerated in Paragraphs (A) through (E) of this subdivision." Tex. Tax Code Ann. § 1.04(2) (Vernon 1992).

**5.** Question number four.

to $650 an acre in 1996. Finally, the jury found "the market value of an acre of lignite in place and not being produced"— $175 for each tax year from 1992 to 1997.

Both NWR and Destec moved for judgment on the verdict. NWR's motion sought judgment on the jury's findings as to the extent of the mine and the market value of the lignite reserves covered by NWR's leases. Because question number four asked the jury to determine the market value of HL & P's "or" Destec's interest, the verdict did not determine the allocation of market value between Destec and HL & P.

NWR introduced evidence at trial that HL & P's overriding royalty interest produces no net income to HL & P. NWR argued that, due to the absence of net income, HL & P's interest has no market value when the income method of appraisal is used. NWR's motion for judgment sought a declaration by the trial court that HL & P's royalty interest has no taxable value, and its motion included a proposed order granting the relief requested. The trial court, substantially adopting the language of NWR's proposed order, rendered judgment that HL & P's overriding royalty interest has no taxable value. It is undisputed that the trial court applied the "income method" of appraisal in so finding. It is also undisputed that, using the income approach, HL & P's overriding royalty interest has no taxable market value. Destec merely questions whether the tax code permits the use of the income approach to assess the value of HL & P's royalty interest.

All taxable property must be appraised at its fair market value. See TEX. TAX CODE ANN. § 23.01 (Vernon 1992). Market value is defined as "the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it." *Polk County v. Tenneco, Inc.*, 554 S.W.2d 918, 921 (Tex.1977). This "comparable sales" method of valuing property becomes less accurate when applied to property interests such as an overriding royalty interest because of the absence of an open market and because the value of the interest lies primarily in its income-producing potential. *See id.* For this reason, taxing authorities and appraisers commonly turn to the "income approach" to value when assessing a property interest of this nature:

> The income approach to value ... proceeds on the premise that a buyer of income-producing property is primarily interested in the income which his property will generate. In simple terms, the approach involves estimating the future income of the property and applying a capitalization rate to that income to determine market value. The capitalization rate may be defined as the rate of interest investors would require as a return on their money before they would invest in the income-producing property, taking into account all the risks involved in that particular enterprise. The income approach thus involves an estimate of two variables, future income and the capitalization rate, which are used to find the market value figure.

*Id.* (citations omitted).

To determine whether the income approach may be used to assess the value of HL & P's interest, we must understand the precise nature of that interest. HL & P's overriding royalty interest was initially created by a "Lignite Supply Agreement" entered into in 1979 between NWR and UFI. UFI was a subsidiary of HL & P created solely for the purpose of acquiring lignite for HL & P's proposed generating station. HL & P conveyed its entire interest in the lignite reserves obtained from Dow to UFI. By the agreement's terms, UFI subleased its lignite reserves to NWR. NWR extracts and delivers all the lignite required by HL & P's generating station. The agreement: 1) requires NWR to pay an overriding royalty to UFI for each ton of lignite produced from the reserves; 2) provides that the price UFI

pays NWR for the lignite must include NWR's "costs of production"; 3) defines "costs of production" to include overriding royalties payable to UFI for each ton of lignite produced from UFI's reserves. As a result, any income UFI received from the overriding royalty payment is immediately reimbursed to NWR as a "cost of production." Through this mechanism, UFI receives a supply of lignite from its reserves but pays NWR's costs of production, including the royalty payment. In 1993, UFI was merged into HL & P, and HL & P succeeded to all UFI's rights and obligations under the lignite supply agreement. Although HL & P unquestionably owns an overriding royalty interest in substantially the same land as Destec, HL & P realizes no net income from its interest. In fact, under the option and agreement between HL & P and Dow, HL & P pays overriding royalties to Destec for each ton of lignite extracted from the reserves.

Because of the contractual relationship between HL & P and NWR, HL & P must reimburse NWR for all the overriding royalties paid to HL & P throughout the term of the agreement. HL & P therefore realizes no net income from the overriding royalty payment. Destec argues that the income approach as applied in this instance yields a fundamentally inadequate assessment of the value of HL & P's interest, thus relieving HL & P of its tax burden. Destec asserts that, because the income approach effectively allows HL & P to manipulate its tax assessment by virtue of a contractual relationship, the court should not have used the income approach to assess HL & P's interest.

■ Destec asks this court to reverse the judgment of the trial court and hold that HL & P's overriding royalty interest has taxable value. In doing so, we would be required to hold that the income approach to value is impermissible in this instance as a matter of law. It is true as a general principle that ad valorem property taxes should be assessed without reference to the effect of burdensome contracts or

encumbrances. *See Martin v. City of Mesquite,* 590 S.W.2d 793, 798 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.) (fee simple interest encumbered by commercial lease). Destec cites *Cherokee Water Co. v. Gregg County Appraisal District* for the proposition that property is to be valued as if the property were not subject to a non-market lease or other contract. *Cherokee Water Co. v. Gregg County Appraisal Dist.,* 773 S.W.2d 949, 954 (Tex.App.—Tyler 1989), *aff'd,* 801 S.W.2d 872 (Tex.1990) (fee simple interest encumbered by water sales contract). Property subject to a lease has intrinsic value separate and distinct from its encumbrances. Tax responsibility for such property has traditionally fallen on the lessor. TEX. TAX CODE ANN. § 25.06 (Vernon 1992). The reason that the income approach is inaccurate as a measure of the value of these interests is because "long-term rental contracts made either in boom times or times of depression may be affected by bad business judgment and would not represent fair value." *Rowland v. City of Tyler,* 5 S.W.2d 756, 760 (Tex. Comm'n App.1928, judgmt. adopted) (fee simple interest encumbered by commercial lease). Thus, the ill-advised lease works as an artificial drain on the assessed value of the interest. The inaccuracies caused by the use of the income method in these circumstances arise from the disparity between the value of the unencumbered estate and the value of the estate as burdened by the lease.

■ However, the unique nature of HL & P's interest sets it apart from those considered in *Martin, Cherokee Water,* and *Rowland.* Unlike fee simple interests in real property subject to a leasehold, mineral rights are severable from the fee estate. *Dallas Central Appraisal Dist. v. Jagee Corp.,* 812 S.W.2d 49, 51 (Tex.App.— Dallas 1991, writ denied). Although an overriding royalty is an interest in real property and not an interest in income, in this instance the value of the interest is defined solely by the income received from production. The absence of net income

renders the interest valueless. This proposition is buttressed by the fact that the instrument creating the overriding royalty is the same instrument that requires that royalty payments be immediately reimbursed to the lessee. Thus the royalty is not so much "encumbered" by the reimbursement requirement as it is in a symbiotic relationship with it, so that the existence of each depends on the other. As opposed to Destec's royalty, HL & P's royalty was created merely as a mechanism by which it could obtain a steady supply of lignite from its own reserves while paying NWR's production costs. The interest has no objective value; its value to HL & P derives solely from HL & P's need for large amounts of lignite from its reserves.

Because the verdict did not allocate the market value of the overriding royalty interest between HL & P and Destec, it became necessary for the trial court to make such a finding. See Tex.R. Civ. P. 279. The court did so according to the evidence before it. We cannot conclude that the court erred as a matter of law in applying the income method of appraisal to HL & P's royalty interest. Issue two is overruled.

The judgment of the trial court is affirmed.

### APPENDIX

### ORIGINAL OPINION

In this appeal arising under the Property Tax Code, we reverse a summary judgment by which the court found that a proposed taxpayer did not have a taxable interest in the property in question.

The Dow Chemical Company (Dow) acquired certain rights to coal and lignite in approximately 12,000 acres in Freestone and Leon Counties. In August 1979, Dow assigned certain coal and lignite leases to Houston Lighting & Power Company (HL & P). Destec Properties Limited Partnership (Destec), the proposed taxpayer, succeeded to all of Dow's rights under the assignment.

For several years, the Freestone County Appraisal District (the District) assessed ad valorem taxes on the property against Utility Fuels, Inc. (UFI), to which HL & P had assigned certain mining rights. In 1992, however, the District assessed Destec. Destec objected to the assessment and, after it completed the administrative review process, sued the District and the Appraisal Review Board (the Board) in the District Court, asserting: (1) it owned no taxable interest in the property, (2) the lignite is not a "mineral in place" under the tax code, (3) it owned no interest in a "mine or quarry" under the tax code, (4) the District acted in an "unequal, discriminatory and unconstitutional" manner, (5) the District's appraisal is "grossly excessive and contrary to law," and (6) the procedure used by the District and Board during the administrative process violated its due-process rights under the state and federal constitutions. Destec also sought attorney's fees.

The District filed a motion to make UFI a party because Destec had asserted that UFI owned part or all of the interest that the District was seeking to tax. Prior to the scheduled hearing on the District's motion, UFI filed a Plea in Intervention. The court denied Destec's motion to strike the intervention.

After both Destec and UFI filed motions for partial summary judgment, the Court granted Destec's motion and declared that lignite is not a "mineral in place" and that Destec's interest is not taxable as real property or as an interest in real property. The court ordered the District to remove Destec's interest from the tax rolls and to refund all taxes, with interest, that Destec had paid by virtue of the assessment, but disallowed Destec's attorney's fees. The court further denied UFI's motion for partial summary judgment and provided that "all relief not granted is denied." Inexplicably, the court then granted a severance by which the "dispute between Defendants

and Intervenor UFI [was] severed and assigned [another cause number]." [2]

Both UFI and the District perfected appeals to this court. We dismissed UFI's appeal because it had no standing after its dispute with the District was severed into another cause. Destec brings a cross-point complaining of the court's denial of attorney's fees.

## STANDARD OF REVIEW

The court granted a summary judgment in favor of Destec, specifying the grounds on which it was granted. In three points of error, the District contends that (1) the court erred in granting the summary judgment because issues of fact exist about whether Destec owns a taxable interest by virtue of certain written agreements, (2) the court erred in ordering the District to remove the interest from the tax rolls, and (3) the court erred in finding that lignite is not a "mineral in place" under the tax code.

The standards for reviewing a summary judgment are well established. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548 (Tex.1985). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to the summary judgment as a matter of law. *Id.* The reviewing court must accept all evidence favorable to the non-movant as true. *Id.* Every reasonable inference must be indulged in favor of the non-movant and all doubts resolved in its favor. *Id.* Evidence which favors the movant will be considered only if it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

A plaintiff who moves for a summary judgment must show that he is entitled to prevail on each element of his cause of action. *Brooks v. Sherry Lane Nat'l Bank,* 788 S.W.2d 874, 876 (Tex.App.—Dallas 1990, no writ). This burden is met if the summary-judgment evidence would be sufficient to support an instructed verdict at trial. *Braden v. New Ulm State Bank,* 618 S.W.2d 780, 782 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

## THE PROPERTY TAX CODE

The Property Tax Code provides for taxation of "real property." Section 1.04 of the code provides, in pertinent part:

(2) "Real Property" means:

  (A) land;

  (B) an improvement;

  (C) a mine or quarry;

  (D) a mineral in place;

  (E) standing timber; or

  (F) an estate or interest, other than a mortgage or deed of trust creating a lien on property or an interest securing payment or performance of an obligation, in a property enumerated in Paragraphs (A) through (E) of this subdivision.

TEX. TAX CODE ANN. § 1.04(2) (Vernon 1992).

The District contends that the Dow–HL & P assignment reserved an interest in a mineral in place and that the interest is taxable under section 1.04(2)(D). Destec, on the other hand, contends that the interest reserved by Dow is not real property as defined by the code, being nothing more than an "income stream," such as a seller of real estate might receive after selling land on an installment sales contract.

## AMBIGUITY

Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances existing at the time the contract was made. *Exxon Corp. v.*

---

2. The District asserts that it is caught between two potential taxpayers, each claiming not to own any interest in question, and that each taxpayer could prevail if the claims are tried separately. At oral argument, the District conceded that both Destec and UFI may own a taxable interest in the property.

*West Texas Gathering Co.*, 868 S.W.2d 299, 302 (Tex.1993). If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex.1980). A contract is ambiguous only if, after the established rules of construction have been applied, the proper meaning of the contract remains genuinely uncertain. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951); *O'Grady v. Gerald D. Hines, Inc.*, 683 S.W.2d 763, 765 (Tex.App.—Houston [14th Dist.] 1984, no writ). Stated another way: A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Skelly Oil Co. v. Archer,* 163 Tex. 336, 356 S.W.2d 774, 778 (1961).

If a contract is ambiguous, the interpretation of the instrument is a fact issue. *Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex. 1979). Thus, the summary judgment cannot stand if the agreement is ambiguous.

If a contract is unambiguous, the courts will give effect to the intention of the parties as expressed or as is apparent in the writing. *Exxon Corp.*, 868 S.W.2d at 302. Courts should construe contracts from a utilitarian standpoint, bearing in mind the particular business activity sought to be served, and need not embrace strained rules of interpretation which would avoid ambiguity at all costs. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *Neece v. A.A.A. Realty Co.*, 159 Tex. 403, 322 S.W.2d 597, 602 (1959).

## ANALYSIS

The relevant agreements are the August 1979 Assignment of Leases, a lease of lignite owned by Dow in fee, and the Option and Agreement dated May 1, 1979. The assignment provides:

[Dow] hereby reserves unto itself and [HL & P] agrees to pay an Overriding Royalty Payment on all coal and lignite mined by [HL & P] and removed from the lands described in the Leases, said Overriding Royalty Payment to be computed and paid as provided in that certain Option and Agreement between the parties hereto effective May 1, 1970.

Although the lease provides for a payment of $215 per acre foot of lignite mined and recovered from the leased premises, it is also "subject to" the terms of the Option and Agreement of May 1.

The court determined as a matter of law that the Assignment, Leases, and the Option and Agreement reserved no interest in real property to Dow. The court also determined that lignite is not a mineral in place under the Property Tax Code. Because the dispute centers around the Option and Agreement, we will refer to it as "the agreement."

Three possibilities exist as we review the court's grant of Destec's summary-judgment motion: (1) the agreement is ambiguous, as contended by the District, in which event we must reverse the summary judgment and remand the cause for a trial on the fact questions presented by the ambiguity; (2) the agreement is unambiguous and, as a matter of law, does not reserve any "real property" interest to Destec, as the court found and as Destec contends, in which event we must affirm the summary judgment; or (3) the agreement is unambiguous but does reserve a "real property" interest to Destec. Under the third possibility, we would, because the interpretation of an unambiguous contract is a question of law, ordinarily reinterpret the agreement and render the judgment that the trial court should have rendered. *See* Tex.R.App. P. 80(b)(3). But, because the District did not move for summary judgment in the trial court and has sought only a remand in this court, we cannot render judgment for the District. We agree with the court that the agreement is

unambiguous; we do not agree that the summary judgment is proper.

The record reflects that Dow reserved an "Overriding Royalty Payment" to be computed and paid as provided in the agreement. Dow (Destec) is to be paid for a minimum of 100 million tons of lignite at $1.04 per ton with periodic adjustments for inflation. The payment was and is to be made as follows:

1. $18,000,000 paid when the assignment was executed as an "Advance Overriding Royalty";

2. A sum paid quarterly for the amount of lignite actually mined, subject to two modifications:

   a. A "minimum annual royalty" based on not less than two and one-half million tons during the first twelve calendar years and not less than three and one-half million tons during the following twenty calendar years; if the quarterly payments do not reach the minimum annual royalty for any year, then an additional payment equal to the difference is due within thirty days after the end of the calendar year; and

   b. Twenty-five percent of all quarterly and annual payments could be withheld to recoup the $18,-000,000 advance.

HL & P had the right to reassign certain tracts to Dow if mining on the tracts had not begun, which would reduce the 100–million–ton payment by agreed amounts.[3] In the event of a reassignment of all of the tracts after January 1, 1985, or the date on which HL & P began mining operations, whichever was earlier, HL & P would owe Dow (Destec) a "lump sum payment" equal to the difference between the amount due for 100 million tons (as reduced by agreed allocations to tracts on which the overburden had not been removed) and the amount that HL & P had

paid up to the time of the reassignment. If HL & P mines more than 100 million tons (or the reduced amount), then Dow (Destec) is entitled to additional payments for lignite actually mined over that amount.

Destec itself alleged that it is entitled to (1) "an overriding royalty on any and all lignite mined in excess of 100 million tons" and (2) a landowner's royalty in the "1150.75 acres of lignite reserves owned in fee by Dow." What Destec disputes is the District's assertion that the interest that the agreement calls an "overriding royalty" payment is in fact the type of interest commonly referred to by that name.

Although labels that parties attach are not controlling, we note that an "overriding royalty" has historically been described as a given percentage of the gross production carved from the working interest, not chargeable with any of the expenses of operation. *See e.g., MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334, 336 (1944); *Zephyr Oil Co. v. Cunningham*, 265 S.W.2d 169, 173 (Tex.Civ.App.— Fort Worth 1954, writ ref'd n.r.e.). We also note that parties "are held to have intended that the words used in their contract should be given their usual and ordinary meaning ... subject, of course, to the restriction that if the words, when used, had a definite and fixed legal meaning they will be given that meaning." *See Griffith v. Taylor*, 156 Tex. 1, 291 S.W.2d 673, 675 (1956).

An overriding royalty interest is an interest in land. *T–Vestco Litt–Vada v. Lu–Cal One Oil Co.*, 651 S.W.2d 284, 291 (Tex. App.—Austin 1983, writ ref'd n.r.e.); *Roberts v. Lone Star Producing Co.*, 369 S.W.2d 373, 376 (Tex.Civ.App.—Eastland 1963, no writ); *Seidel v. Gully*, 242 S.W.2d 442, 444 (Tex.Civ.App.—Eastland 1951, no writ). A royalty interest is an interest in land that is part of the total mineral estate. *Luckel v. White*, 819 S.W.2d 459, 463 (Tex.1991). *Luckel* describes interests

**3.** None of the tracts have been reassigned to Dow.

such as the right to receive delay rentals, production payments, and possibilities of reverter as "other rights and attributes of the mineral estate." Id.[4]

Having carefully reviewed the agreement, we cannot agree with the trial court that no interest in "real property" was reserved by Dow, Destec's predecessor. Because we find that Destec owns an estate or interest in land, we cannot affirm the summary judgment. See TEX. TAX CODE ANN. § 1.04(2).

Because we could not render judgment for the District even if we were to fully interpret the agreement, we are unwilling to do so. Based on our determination that the agreement is not ambiguous, considering the provisions of the agreement that we have discussed, we reverse the summary judgment and remand the cause to the trial court for further proceedings.

Having made an initial determination that the agreement reserved some interest in "real property," we need not reach the question of whether lignite is a "mineral in place" or whether Destec owns an interest in a "mine or quarry." We also do not reach Destec's cross-point.

## OPINION DENYING MOTION FOR REHEARING

Destec's motion for rehearing indicates that it may have misconstrued our opinion on original submission, believing that the "interest in land" that we found was its surface interest in the so-called "fee tract" that it owns. The "interest in land" Dow (Destec) reserved by the agreement is the overriding royalty interest in the lignite reserves.

The Supreme Court, in *Gifford–Hill & Company, Inc. v. Wise County Appraisal District*, 827 S.W.2d 811 (Tex.1991), upon which Destec relies heavily, was not called upon to decide whether the limestone rock was legally taxable as "land." The opinion states that Gifford–Hill and the Wise County Appraisal District agreed "that limestone rock is real property and that it is legally taxable as land." Id. at 814. What the Court decided was that the limestone is not a "mineral in place" under the tax code. Id. at 816. It also did not say that the limestone rock, which Gifford–Hill owned partly in fee and partly by lease, was not taxable; in fact, the opinion says that the "value of the land containing the non-producing limestone should be determined by applying a per-acre value to the number of acres covered by the interest rather than by an intrinsic price based upon the market price of the limestone per ton." Id. The Court reversed the summary judgment in favor of the appraisal district because a fact issue existed about the extent of Gifford–Hill's quarry on the 2500 acres that it owned or leased. Id.

If the limestone rock in *Gifford–Hill* was real property and legally taxable as land, then the lignite in Freestone County (even if not a "mineral in place") is real property and legally taxable as land. Because we found that the overriding royalty interest reserved by Dow (Destec) was an interest in land, i.e., the lignite, we reversed the summary judgment.

With these further observations, we deny Destec's motion for rehearing.

4. On the other hand, "take-or-pay" provisions, usually associated with gas contracts, are contractual in nature. "Take or pay is not a payment for production; it is a payment for nonproduction." *Mandell v. Hamman Oil and Refining Co.*, 822 S.W.2d 153, 164 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Payments that Destec receives are for production. It is apparent from the agreement that the parties contemplated that more than 100 million tons of lignite will ultimately be mined.