OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



November 26, 2001

The Honorable Pat Phelan
Hockley County Attorney
802 Houston, Suite 211
Levelland, Texas 79336

The Honorable G. Dwayne Pruitt
Terry County Attorney
500 West Main, Room 208E
Brownfield, Texas 79316-4335

Opinion No. JC-0436

Re: The ad valorem taxation of mineral interests that extend across the boundary between two counties (RQ-0389-JC)

Gentlemen:

You ask about the proper method for allocating the taxable value of mineral interests that straddle the boundary between your two counties.[1] While the Tax Code does not address this situation directly, we conclude on the basis of the Tax Code and prior judicial and attorney general opinions that each county must separately determine the market value of a mineral interest as it appertains to surface land located within that county's boundaries according to generally accepted appraisal methods.

You each present us with various facts relating to oil and gas leases that extend across your counties' common border. This office does not make findings of fact or resolve disputed questions of fact. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual determinations."); O-2911 (1940) at 2 ("[T]his . . . presents a fact question which we are unable to answer."). However, based on the descriptions in your letters, we present the following facts as background to your legal question.

Your query involves the ad valorem taxation of a working interest in an oil and gas lease. A working interest in an oil and gas lease is the interest owned by the operator of the lease who has the exclusive right to exploit the minerals and is usually responsible for all direct operating costs. *See* HOWARD R. WILLIAMS & CHARLES J. MYERS, OIL AND GAS TERMS: ANNOTATED MANUAL OF

---

[1]Letter from Honorable Pat Phelan, Hockley County Attorney, to Honorable John Cornyn, Texas Attorney General, at 1-2 (received Jun. 7, 2001) (on file with Opinion Committee) [hereinafter Hockley County Request Letter]; Letter from Honorable G. Dwayne Pruitt, Terry County Attorney, to Honorable John Cornyn, Texas Attorney General, at 1 (Jun. 20, 2001) (on file with Opinion Committee) [hereinafter Terry County Request Letter].

LEGAL ENGINEERING TAX WORDS AND PHRASES 979 (6th ed. 1984) (defining working interest) [hereinafter OIL AND GAS TERMS]; TEX. COMPTROLLER, GENERAL APPRAISAL MANUAL, LEGAL REQUIREMENTS, OPERATIONS, VALUATION PROCEDURES, at M-18 (1985) (Appraisal of Minerals) (on file with Opinion Committee) [hereinafter MANUAL]. By contrast, the owner of a royalty interest is entitled to a share of production, generally free of the costs of production. *See* OIL AND GAS TERMS 775 (defining royalty interest).

You state that eighty-four percent of the surface estate associated with the working interest is located in Hockley County; sixteen percent of the surface estate is located in Terry County. Two producing wells are located in Hockley County; five are located in Terry County. The two sets of wells produce at the same rate. In addition, Terry County asserts that the underlying minerals are not evenly distributed and that the underlying reservoir is more heavily concentrated in Terry County. *See* Terry County Brief, at 1, 3 (attached to Terry County Request Letter, *supra* note 1).

The Hockley County Appraisal District (HCAD) has appraised eighty-four percent of the value of the mineral interest because eighty-four percent of the surface estate associated with the mineral interest is located in Hockley County. On the other hand, the Terry County Appraisal District (TCAD) has appraised fifty percent of the value of the mineral interest because the district's analysis of the present production rates and geological data indicate that fifty percent of the remaining recoverable reserves are located in Terry County. Hockley County cites "a fundamental difference" between the appraisal districts with respect to what they are appraising: "HCAD believes that it is valuing the mineral interests created by interests in real property, while TCAD is apparently appraising the minerals that are under the ground." Hockley County Request Letter, *supra* note 1, at 1.

Because the appraisal districts cannot agree on the proper method of allocating the taxable value of the mineral interest, you ask whether the allocation of the mineral interest should "be based: (1) on the ratio of surface acreage covered under the lease attributable to each county, or (2) on an engineering analysis of the reservoir, the production of minerals, and the remaining recoverable reserves present in each county." Hockley County Request Letter, *supra* note 1, at 1-2; Terry County Request Letter, *supra* note 1, at 1. It is not clear from your queries whether you are asking only about the valuation of the working interest in the oil and gas lease or if you are also concerned about other interests, such as royalty interests. In addition, Terry County has recently asked about a second oil and gas lease.[2] We answer your questions generally, without regard to any particular mineral interest or type of mineral interest.

We begin with a brief review of the ad valorem taxation of mineral interests. The Texas Constitution provides that "[a]ll property . . . shall be assessed for taxation, and the taxes paid in the county where situated." TEX. CONST. art. VIII, § 11. Under the Tax Code, an estate or interest in oil, gas, or other minerals is taxable as real property. *See* TEX. TAX CODE ANN. § 1.04(2) (Vernon Supp.

---

[2]*See* Letter from Honorable G. Dwayne Pruitt, Terry County Attorney, to Honorable John Cornyn, Texas Attorney General (Sept. 4, 2000) (on file with Opinion Committee).

2001) (defining "real property" to include both "a mineral in place" or "an estate or interest . . . in property"); *see also Electra Indep. Sch. Dist. v. Waggoner Estate*, 168 S.W.2d 645, 650 (Tex. 1943) (treating a working interest in mineral as an interest in real property taxable as real property); *Sheffield v. Hogg*, 77 S.W.2d 1021, 1030 (Tex. 1934) (holding mineral royalty interest taxable as real estate). Under the Tax Code provisions governing the taxable situs of property, real property is taxable by a taxing unit if located in the unit on January 1 of the tax year at issue. *See* TEX. TAX CODE ANN. § 21.01 (Vernon Supp. 2001). As this office noted in Attorney General Opinion DM-490, "Courts have held that because a royalty interest is taxable as an interest in land, it is taxable as real estate in the county where the land to which it appertains is located, rather than in the county where the owner of the interest resides." Tex. Att'y Gen. Op. No. DM-490 (1998) at 2 (citing *Jett v. Kahn*, 273 S.W.2d 431, 433 (Tex. Civ. App.–Beaumont 1954, writ ref'd n.r.e.) ("royalties are 'rights and privileges belonging or . . . appertaining' to the land leased . . . and are therefore assessable as real property by the defendant county and school district . . . ."); *Wilcox v. Hull-Daisetta Indep. Sch. Dist.*, 95 S.W.2d 490, 493 (Tex. Civ. App.–Beaumont 1936, writ ref'd) (concluding that "said 3 per cent royalty or interest is an interest in the 300 acres of land and so taxable as real estate in the county where the land is located" and rejecting argument that royalty interest payable only in money was interest in personal property taxable only in interest owner's county of residence). Thus, the taxable situs of a working or royalty interest in an oil and gas lease is the location of the surface estate to which the interest appertains. *See id.*

Chapter 25 of the Tax Code, governing the appraisal of taxable property, requires the chief appraiser of each taxing unit to prepare appraisal records listing all property that is taxable in the district and stating the appraised value of each. *See* TEX. TAX CODE ANN. § 25.01 (Vernon 1992). When different persons own land and improvements in separate estates or interests, each separately owned estate or interest shall be listed separately. *See id.* § 25.04. Unless the owners of separate mineral interests request joint taxation, "each separate interest in minerals in place shall be listed separately from other interests in the minerals in place." *Id.* § 25.12 (Vernon Supp. 2001). If the owners request joint taxation, then the separate interests are listed jointly, usually in the name of a designated operator. *See id.* In addition, chapter 25 specifically requires that "[i]f real property is located partially outside and partially inside a taxing unit's boundaries, the portion inside the unit's boundaries shall be listed separately from the remaining portion." *Id.* § 25.17 (Vernon 1992).

All taxable property is appraised at its market value of as January 1 of any given tax year. *See id.* § 23.01(a) (Vernon Supp. 2001). "Market value" is defined by the Tax Code to mean:

> the price at which a property would transfer for cash or its equivalent under prevailing market conditions if:
>
> (A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;
>
> (B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and

> (C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

*Id.* § 1.04(7).

The Tax Code provides the following general directive regarding appraisal methods for determining the market value of taxable property:

> The market value of property shall be determined by the application of generally accepted appraisal methods and techniques. If the appraisal district determines the appraised value of a property using mass appraisal standards, the mass appraisal standards must comply with the Uniform Standards of Professional Appraisal Practice. The same or similar appraisal methods and techniques shall be used in appraising the same or similar kinds of property. However, each property shall be appraised based upon the individual characteristics that affect the property's market value.

*Id.* § 23.01(b). A taxing unit's chief appraiser, in determining the market value of property, "shall consider the cost, income, and market data comparison methods of appraisal and use the most appropriate method." *Id.* § 23.0101.

The income approach is generally the most appropriate method for appraising oil and gas interests. As one court has explained:

> [The] 'comparable sales' method of valuing property becomes less accurate when applied to property interests such as an overriding royalty interest [in a mineral] because of the absence of an open market and because the value of the interest lies primarily in its income-producing potential. For this reason, taxing authorities and appraisers commonly turn to the 'income approach' to value when assessing a property interest of this nature.

*Destec Properties, Ltd. v. Freestone Cent. App. Dist.*, 6 S.W. 3d 601, 605 (Tex. App.–Waco 1999, pet. denied) (citation omitted); *see also* MANUAL *supra*, at M-1 (income approach generally only feasible method for appraising interests in oil and gas). Under section 23.012 of the Tax Code, a chief appraiser who uses the income method of appraisal is required to:

> (1) use rental income and expense data pertaining to the property if possible and applicable;

> (2) make any projections of future rental income and expenses only from clear and appropriate evidence;

> (3) use data from generally accepted sources in determining an appropriate capitalization rate; and

> (4) determine a capitalization rate for income-producing property that includes a reasonable return on investment, taking into account the risk associated with the investment.

TEX. TAX CODE ANN. § 23.012 (Vernon Supp. 2001). In the case of an oil and gas lease, an analysis of the income to be produced from the mineral interest would take into account not just economic data but also geological and engineering information, such as the productivity of the wells, reservoir characteristics, remaining recoverable reserves, and the likelihood of recovery. *See, e.g.,* MANUAL *supra,* at M-1-15.

Section 23.175 of the Tax Code provides special rules for the appraisal of a real property interest in oil or gas in place when the appraisal takes into account the future income from the sale of oil or gas to be produced from the interest. *See* TEX. TAX CODE ANN. § 23.175(a) (Vernon Supp. 2001) ("If a real property interest in oil or gas in place is appraised by a method that takes into account the future income from the sale of oil or gas to be produced from the interest, the method must use the average price of the oil or gas from the interest for the preceding year as the price at which the oil or gas produced from the interest is projected to be sold in the current year of the appraisal."). This provision also requires the Comptroller by rule to develop and distribute to each appraisal office appraisal manuals that specify methods and procedures to discount future income from the sale of oil or gas from the interest to present value and requires each appraisal office to use the methods and procedures specified by these appraisal manuals. *See id.* § 23.175(b), (c). The Comptroller has complied with this legislative directive by promulgating a lengthy rule on discounting oil and gas income. *See* 34 TEX. ADMIN. CODE § 9.4031 (2001) (Tex. Comptroller of Public Accounts, Manual for Discounting Oil and Gas Income). We also note that section 23.17 of the Tax Code establishes a special rule for the appraisal of certain types of mineral interests that are not in production, but is not applicable here. *See* TEX. TAX CODE ANN. § 23.17 (Vernon 1992).

We have located only one other provision in the Tax Code that deals with the appraisal of mineral interests for purposes of ad valorem taxation. Section 41.455 of the Tax Code addresses a tax protest involving a pooled or unitized mineral interest that is being produced in more than one appraisal district. Subsection (b) of this provision specifically addresses protests involving pooled or unitized mineral interests that are being produced at two or more production sites located in more than one county:

> (b) If a property owner files protests relating to a pooled or unitized mineral interest that is being produced at two or more production sites located in more than one county with the appraisal review boards of more than one appraisal district and at least two-thirds of the surface area of the mineral interest is located in the county for which one of the appraisal districts is established, the

> appraisal review board for that appraisal district must determine the protest filed with that board and make its decision before another appraisal review board may hold a hearing to determine the protest filed with that other board.

*Id.* § 41.455(b) (Vernon Supp. 2001). We note, however, that this provision deals with the proper procedures to follow when a property owner files a protest rather than how a mineral interest that extends across a county line should be appraised in the first place.

Again, you ask about the proper valuation of a mineral interest that appertains to surface property that extends across a county line. The Tax Code does not directly address this situation. Attorney General Opinion DM-490, which you both cite, is relevant to your query, but does not resolve it. *See* Tex. Att'y Gen. Op. No. DM-490 (1998). That opinion considered the taxation of royalty interests in a pooled gas unit sharing income from a well located in one school district, but which appertained to surface property located in both that school district and another. *See id.* at 1. Only the school district where the well was located had been taxing the royalty interests. This office was asked whether a taxing unit is entitled to tax royalty interests based upon the location of the well or based upon the location of surface property to which the royalty interests appertain. *See id.* Based upon case law establishing that the taxable situs of a royalty interest is the location of the surface property to which it appertains, *see id.* at 2; *see also* cases cited *supra* page 3, we concluded that a taxing unit is entitled to assess ad valorem taxes against a royalty interest based upon the location of the surface property to which the royalty interest appertains.

Here, the question is not whether each county is entitled to tax the mineral interest at issue but rather how the mineral interest should be valued in each county. Under the Tax Code and our prior opinion, we conclude that each county is limited to valuing the mineral interest only as it appertains to surface property located in the county. *See* Tex. Att'y Gen. Op. No. DM-490 (1998) (taxable situs of mineral interest is location of surface property to which it appertains); TEX. TAX CODE ANN. §§ 25.01 (appraisal records must list and state appraised value of taxable property), 25.17 ("If real property is located partially outside and partially inside a taxing unit's boundaries, the portion inside the unit's boundaries shall be listed separately from the remaining portion.") (Vernon 1992); *see also* TEX. CONST. art. VIII, § 11 ("All property . . . shall be assessed for taxation, and the taxes paid in the county where situated"). Furthermore, each county must appraise the mineral interest as it appertains to surface property located in the county at its market value as of January 1, using generally accepted appraisal methods and techniques. *See* TEX. TAX CODE ANN. § 23.01 (Vernon Supp. 2001). "The same or similar appraisal methods and techniques shall be used in appraising the same or similar kinds of property. However, each property shall be appraised based upon the individual characteristics that affect the property's market value." *Id.* Special rules and considerations must be taken into account in the appraisal of mineral interests, *see, e.g., id.* § 23.175; 34 TEX. ADMIN. CODE § 9.4031 (2001); MANUAL, *supra*; the income approach is generally the most appropriate method, *see Destec,* 6 S.W. 3d at 60; MANUAL, at M-1 5.

You specifically ask whether the counties should allocate the mineral interest "based: (1) on the ratio of surface acreage covered under the lease attributable to each county, or (2) on an engineering analysis of the reservoir, the production of minerals, and the remaining recoverable reserves present in each county." Hockley County Request Letter, *supra* note 1, at 1-2; Terry County Request Letter, *supra* note 1, at 1. The Tax Code requires each county to separately determine the market value of the mineral interest only as it pertains to surface estate located in the county according to generally accepted appraisal methods. *See* TEX. TAX CODE ANN. §§ 23.01-.013, .175 (Vernon 1992 & Supp. 2001); 34 TEX. ADMIN. CODE § 9.4031 (2001). This will generally involve entirely separate appraisals. In the event, however, that the market value of the mineral interest is uniform across the surface estate, then simply determining the market value of the entire mineral interest and allocating that value according to the ratio of surface acreage located in each county *may* be an appropriate method of appraising the market value of the mineral interest. This may be the case, for example, if the mineral interest owners have entered into a pooling agreement or some other kind of contractual arrangement that allocates production revenue based on surface acreage, or if the mineral itself is evenly distributed across the surface estate.

If, on the other hand, the market value is *not* uniform across the surface estate, then simply allocating the value of the entire mineral interest based on surface acreage is not appropriate. The appropriate method in that case is to appraise the mineral interest in each county based upon generally accepted appraisal methods. These methods would normally include an analysis of the income to be produced from the mineral interest in the county, which would take into account geological and engineering information such as the productivity of the wells located in the county, reservoir characteristics, remaining recoverable reserves and the likelihood of recovery. *See, e.g.*, MANUAL, *supra*, at M-1-15. In this case, the actual location of the mineral is important to the extent it affects the market value of the mineral interest in each county.

Hockley County asserts with respect to one oil and gas lease that the mineral interest owners share in the revenues from all seven wells "dependent only on the relative contribution of the interest owner's land to the lease as a whole," Hockley County Brief, at 2 (attached to Hockley County Request Letter, *supra* note 1), suggesting that, under the income method of appraisal, the market value of at least some of the mineral interests in the oil and gas lease may be uniform across the surface estate. This, however, is not an issue that we can resolve in an attorney general opinion. The valuation of mineral interests is both fact-bound and highly technical. *See, e.g.*, MANUAL, *supra* at M-1 ("The appraisal of mineral properties is a highly technical field normally requiring extensive knowledge and training on the part of the appraiser.") As this office does not make findings of fact[3] and has no particular expertise in the accounting and geological issues involved in appraisal of mineral interests, we cannot ultimately determine the market value of a mineral interest as it pertains to the surface estate in each of your counties.

---

[3]*See* attorney general opinions cited *supra* page 1.

## S U M M A R Y

When a mineral interest appertains to surface property that crosses a county line, each county must separately determine the market value of the mineral interest only as it pertains to surface property located in the county according to generally accepted appraisal methods. *See* TEX. TAX CODE ANN. §§ 23.01-.013, .175 (Vernon 1992 & Supp. 2001); 34 TEX. ADMIN. CODE § 9.4031 (2001). If the market value of the mineral interest is uniform across the surface estate, simply determining the market value of the entire mineral interest and allocating that value according to the ratio of surface acreage located in each county *may* be an appropriate method of appraising the market value of the mineral interest. If, on the other hand, the market value is *not* uniform across the surface estate, simply allocating the value of the entire mineral interest based on surface acreage is not appropriate.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee