

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-399-CR

PAUL WAYNE DAMRON                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In one point, appellant Paul Wayne Damron appeals the trial court's requirement that he pay for a Secure Continuous Remote Alcohol Monitor (SCRAM) as a condition of his community supervision associated with his felony driving while intoxicated (DWI) conviction. *See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003), § 49.09(b)(2) (Vernon Supp. 2009). We modify the trial court's judgment and affirm the judgment as modified.

---

[1] *See* Tex. R. App. P. 47.4.

**Background Facts**

A Wichita County grand jury indicted Damron for DWI; the indictment alleged that Damron had two previous convictions for that offense. Damron swore that he was indigent and therefore received court-appointed counsel.

At a pretrial hearing in May 2008, Damron's counsel told the trial court that Damron had tentatively agreed with the State to a plea bargain that would include community supervision but that Damron wanted to testify about his inability to pay for a SCRAM device, which was to be one of the terms of the community supervision.[2] Damron testified that he would not be able to afford the $360 per month cost of the device.[3] Specifically, he explained that he had a job that paid him $9.50 per hour but that he was about to lose his job because the business that he worked for was closing. He also testified that he had been paying past due child support and owed approximately $20,000 for such support; that he pays bills for utilities, groceries, car insurance, and gas; and that he owes money for medical bills. The trial court expressed uncertainty

---

[2] A SCRAM device is an instrument that may be placed on an individual's ankle to measure the individual's alcohol consumption through vapors emitted by the individual's skin.

[3] The SCRAM device also requires a $60 set up fee.

about removing the SCRAM condition but told the parties that it would consider Damron's request to remove it.

Sometime between the May 2008 hearing and August 21, 2008, the trial court told the parties that it would not remove the SCRAM device as a condition of Damron's community supervision.[4] On the morning of August 21, Damron filed a written "Objection" to the SCRAM condition. Then, on the same day, as part of his plea agreement, Damron received admonishments from the trial court about his rights, waived those rights, entered a judicial confession, and pled guilty.[5]

---

[4] The record reflects that by July 10, 2008 — when the trial court held another pretrial hearing — the trial court had informed the parties of its decision to retain the SCRAM condition.

[5] The record contains a document signed by Damron in which he purportedly waived his right to appeal; the document is not signed by the trial court. Damron's counsel has stated that Damron did not intend to waive his appellate rights and that the waiver document was supposed to be pulled from the packet of papers that were filed in this case on the day that Damron pled guilty. The State's attorney said that his recollection about the day of Damron's plea was "pretty much the same" as Damron's counsel had represented. The trial court has found that Damron waived his right of appeal, but it stated during a hearing that it "knew that Mr. Damron wanted to appeal the issue of . . . having to wear the SCRAM device." Given the parties' statements and the trial court's statement, we hold that Damron did not waive his right of appeal through the waiver document filed in the trial court. *See Willis v. State*, 121 S.W.3d 400, 402–03 (Tex. Crim. App. 2003) (declining to enforce a nonbargained for and boilerplate waiver of the defendant's right of appeal); *Alzarka v. State*, 90 S.W.3d 321, 324 (Tex. Crim. App. 2002) (same).

The trial court convicted Damron and placed him on community supervision for five years. Damron's community supervision includes the conditions that he wear a SCRAM device for 180 days, pay all costs for the SCRAM device to the monitoring company, and pay other substantial fees and costs that are unrelated to the SCRAM device.

In September 2008, Damron again objected to the SCRAM condition by filing a motion to modify the terms of his community supervision. The trial court heard that motion and Damron's motion for new trial during a hearing in October 2008.[6] After the hearing, the trial court denied both motions. Damron filed his notice of appeal.

**Our Jurisdiction Over This Appeal**

In one point, Damron argues that the trial court abused its discretion by unreasonably requiring him to pay the costs associated with the SCRAM device.[7] The State "does not contest" Damron's claim that the trial court

---

[6] During the October 2008 hearing, Damron testified that he had lost his job but that he had been applying for other jobs. He said that he was receiving $235 per week in unemployment benefits and that his ex-wife, who he lives with and who has medical problems, was receiving $620 per month in disability benefits. He said that he was behind on paying his bills, that he was paying $335 per month in child support, and that he had no way to pay for the $360 per month SCRAM cost.

[7] Damron does not contest the trial court's order that he wear the SCRAM device; he only challenges the trial court's requirement that he pay for the device.

4

abused its discretion, but it argues that we do not have jurisdiction over Damron's appeal.

**The requirements of rule of appellate procedure 25.2**

The State contends that we do not have jurisdiction because Damron did not comply with the rules of appellate procedure. Rule 25.2 states in part,

> In a plea bargain case—that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant—a defendant may appeal only:
>
> (A) those matters that were raised by written motion filed and ruled on before trial, or
>
> (B) after getting the trial court's permission to appeal.

Tex. R. App. P. 25.2(a)(2); *see Ex parte Reedy*, 282 S.W.3d 492, 501 (Tex. Crim. App. 2009); *Turley v. State*, 242 S.W.3d 178, 179–80 (Tex. App.—Fort Worth 2007, no pet.) (mem. op.) (dismissing an issue without addressing its merits because the trial court did not give the appellant permission to appeal that issue and the issue was not raised by a written motion filed and ruled on before trial). The record establishes that this is a plea bargain case and that the trial court has not given Damron its permission to appeal; thus, our jurisdiction depends on whether Damron's "Objection" to the SCRAM condition qualifies as a "written motion filed and ruled on before trial." *See* Tex. R. App. P. 25.2(a)(2)(A).

5

At the time of Damron's plea, the trial court entered an order certifying Damron's right to appeal based on his written objection. In December 2009, based on our initial review of the record, we abated the case in part because it appeared to us that Damron may not have obtained a ruling on his objection before trial. During the abatement, the trial court held a hearing, determined that Damron had not complied with rule 25.2, issued written findings in that regard, and amended its certification to state that this is "a plea-bargain case, and the defendant has NO right of appeal." The trial court's written findings relate, among other facts,

- "It is not disputed that the issue of the SCRAM community supervision term was raised pretrial";

- "By July 10, 2008, the trial court had informed the defendant that any community supervision would include the SCRAM term. No written pretrial motion had been filed as of the July 10, 2008 hearing"; and

- "Minutes prior to the entry of his guilty plea, the defendant filed a 'written objection to community supervision provision(s).' At the time the 'objection' was filed, the trial court had already announced its decision."

We must review the correctness of a trial court's certification of a defendant's right to appeal, and if we determine that the court's certification is not supported by the record, we must take appropriate action. *See Chavez v. State*, 183 S.W.3d 675, 680 (Tex. Crim. App. 2006); *Dears v. State*, 154

6

S.W.3d 610, 614–15 (Tex. Crim. App. 2005); *Morgon v. State*, 185 S.W.3d 535, 538–39 (Tex. App.—Corpus Christi 2006, pet. ref'd) (holding that the trial court's certification was defective and dismissing an appeal without further action). After reviewing the record, including the portions of the record filed after we issued our abatement order, we conclude that the trial court's second certification of Damron's right to appeal is incorrect and that the court's first certification is correct, and we hold that Damron complied with rule 25.2(a)(2) because he raised matters by a written motion filed and ruled on before trial.

Specifically, we conclude that Damron's "Objection" was ruled on before trial because the substance of the sole issue in the written objection—the inclusion of the SCRAM term—had been presented to the trial court through Damron's testimony before the objection was filed and the trial court ruled on the inclusion of that term. Although we have not found authority directly on point, we cannot agree with the trial court that under the circumstances of this case, rule 25.2(a)(2) required a further ruling that simply reiterated the trial court's position that Damron was required to pay for the SCRAM unit after the written objection was filed.[8] *See Montanez v. State*, 195 S.W.3d 101, 104

---

[8] There is no indication that the trial court would have ruled any differently than it had ruled before Damron entered his guilty plea if Damron had asked for an explicit ruling on his written objection; the trial court maintained its ruling against Damron's objection to paying for the SCRAM device when

7

(Tex. Crim. App. 2006) (explaining that a "trial court's ruling on a matter need not be expressly stated if its actions or other statements otherwise unquestionably indicate a ruling").

Our holding that Damron complied with rule 25.2(a)(2) is supported by the court of criminal appeals's statement that the rules of appellate procedure should prevent trivial issues from divesting appellate courts of jurisdiction to consider the merits of criminal cases. *Few v. State*, 230 S.W.3d 184, 187 (Tex. Crim. App. 2007). We should "not dismiss an appeal for a procedural defect whenever any arguable interpretation of the Rules of Appellate Procedure would preserve the appeal," and we should not divest a defendant of his or her right to appeal "by imposing requirements not absolutely necessary to effect the purpose of a rule." *Id.* at 189; *see also Thomas v. State*, 286 S.W.3d 109, 113 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Few* and explaining that courts of appeals should construe procedural rules reasonably, yet liberally).

The State argues in its brief that Damron's "Objection" is different from a "motion" under rule 25.2(a)(2) because it was not an application for the court to rule. The "Objection" stated, "The [SCRAM condition] of the order setting

Damron filed his posttrial motions.

8

community supervision . . . is unreasonable and the Defendant objects . . . ." The State has not cited (and we have not found) any authority distinguishing an "objection" and a "motion" as to the ability to establish jurisdiction under rule 25.2. In the context of this case, Damron's "Objection" obviously related to his prior verbal request that he should not be ordered to pay for the SCRAM device. "Motions" and "objections" are treated similarly in the appellate procedural rules and are defined alike. *See* Tex. R. App. P. 33.1(a)(1) (explaining that a complaint may be preserved through a timely "request, objection, or motion"); Black's Law Dictionary 1106, 1178 (9th ed. 2009) (defining "motion" as a "written or oral application requesting a court to make a specified ruling or order" and defining "objection" as a "formal statement opposing something that has occurred, or is about to occur, . . . and seeking the judge's immediate ruling on the point"). We hold that Damron's "Objection" qualifies as a motion under rule 25.2(a)(2).

For all of these reasons, we hold that Damron complied with rule 25.2, that his appeal is based on a written motion filed and ruled on before trial, and that we have jurisdiction over the appeal on that basis.

**Article 11.072's habeas corpus provisions**

Next, the State contends that we lack jurisdiction over this appeal because it asserts that a challenge to a condition of community supervision

9

must be filed by an application for a writ of habeas corpus under article 11.072 of the code of criminal procedure and not by a direct appeal. Article 11.072 dictates the procedures for seeking relief from a "judgment of conviction ordering community supervision," but it does not explicitly state that challenges to terms of community supervision cannot be prosecuted through a direct appeal. *See* Tex. Code Crim. Proc. Ann. art. 11.072 § 1 (Vernon 2005).

As authority for its argument, the State principally relies on an unpublished decision from the court of criminal appeals. *See Beauchamp v. State*, No. 254-03, 2004 WL 3093227, at *4 (Tex. Crim. App. Sept. 22, 2004) (not designated for publication). But as the State recognizes, unpublished opinions from the court of criminal appeals have no precedential value, and we cannot cite to or rely on such opinions as authority. *See* Tex. R. App. P. 77.3.

We have not found any other case from the court of criminal appeals in which that court repeated its holding in *Beauchamp* that article 11.072 is the exclusive avenue to challenge conditions of community supervision. Instead, without discussing the effect of article 11.072, the court of criminal appeals recently decided a direct appeal in which the only issue concerned the propriety of jail time as a condition of community supervision. *See Johnson v. State*, 286 S.W.3d 346, 347 (Tex. Crim. App. 2009); *see also Ex parte Clore*,

10

690 S.W.2d 899, 900 (Tex. Crim. App. 1985) (holding—in a case that was decided before the enactment of article 11.072 and that regarded the court of criminal appeals's constitutional writ powers—that the defendant's "appropriate remedy to challenge the conditions of probation [was] by appeal"). We have also decided challenges to community supervision terms in direct appeals. *See, e.g., Beech v. State*, Nos. 02-08-00053-CR, 02-08-00054-CR, 2009 WL 673482, at *1–2 (Tex. App.—Fort Worth Mar. 12, 2009, no pet.) (mem. op., not designated for publication).

While article 11.072 allows for challenges to the legal validity of conditions of community supervision, it also states that a challenge may not be made under that article "if the applicant could obtain the requested relief by means of an appeal under . . . Rule 25.2, Texas Rules of Appellate Procedure." Tex. Code Crim. Proc. Ann. art. 11.072 §§ 2(b)(2), 3(a); *see Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.) (holding that a challenge to a community supervision condition through an article 11.072 application was waived because the challenge was not made through a direct appeal); *Lopez v. State*, 46 S.W.3d 476, 480 (Tex. App.—Fort Worth 2001, pet. ref'd) (stating that we "are prohibited from hearing . . . a challenge to the validity of a condition of community supervision unless . . . [an] *appeal was taken directly* from the court's ruling") (emphasis added). We have held that

11

Damron may appeal under rule 25.2. Thus, we hold that article 11.072 does not prohibit Damron from challenging his SCRAM term on direct appeal but rather requires him to do so, and we conclude that article 11.072's provisions do not defeat our jurisdiction over this appeal.

**The Merits of Damron's Appeal**

We review the imposition of conditions of community supervision under an abuse of discretion standard. *Belt v. State*, 127 S.W.3d 277, 280 (Tex. App.—Fort Worth 2004, no pet.). As relating to community supervision conditions generally, the code of criminal procedure states,

> A judge may not order a defendant to make any payments as a term or condition of community supervision, except for fines, court costs, restitution to the victim, and other conditions related personally to the rehabilitation of the defendant or otherwise expressly authorized by law. *The court shall consider the ability of the defendant to make payments in ordering the defendant to make payments under this article.*

Tex. Code Crim. Proc. Ann. art. 42.12, § 11(b) (Vernon Supp. 2009) (emphasis added). And more specifically, in a DWI case,

> If a judge requires as a condition of community supervision that the defendant participate in a prescribed course of conduct necessary for the rehabilitation of the defendant's drug or alcohol dependence condition, the judge shall require that the defendant pay for all or part of the cost of such rehabilitation *based on the defendant's ability to pay*.

*Id.* art. 42.12, § 13(d) (emphasis added).

12

The undisputed evidence that is summarized above shows that Damron is unable to pay for the SCRAM condition. Thus, because the imposition of costs related to DWI rehabilitation must be "based on the defendant's ability to pay," we hold that the trial court abused its discretion by ordering him to pay for the condition.[9] *Cf. Chauncey v. State*, 837 S.W.2d 179, 184–85 (Tex. App.—El Paso 1992) (holding that the trial court did not err by ordering the defendant to pay for daily alcohol and drug tests during his probation because the defendant did not present evidence that he could not make the payments), *aff'd*, 877 S.W.2d 305 (Tex. Crim. App. 1994).

Because we hold that the trial court erred by including the condition that Damron pay for the SCRAM device when the evidence showed his inability to do so, we sustain Damron's sole point, and we delete the condition that requires him to pay for the device. *See Belt*, 127 S.W.3d at 281. Because Damron has not contested the trial court's requirement that he wear the

---

[9] In a case in which the evidence indicated that the defendant was not able to pay monthly restitution expenses that the trial court had ordered, we held that the trial court nonetheless did not err by ordering the payments because the record showed that the trial court "considered" the defendant's ability to make the payments, as required by section 11(b) of article 42.12. *Pennington v. State*, 902 S.W.2d 752, 753–55 (Tex. App.—Fort Worth 1995, pet. ref'd). This case differs from *Pennington* because section 13(d), unlike section 11(b), affirmatively requires that the costs imposed in DWI cases must be based on the defendant's ability to pay them and not merely that the trial court shall consider the defendant's ability to pay.

13

SCRAM device, our opinion does not prevent the trial court from requiring him to wear the device if it does so in a way other than requiring him to pay the costs for it.

**Conclusion**

Having sustained Damron's only point, we modify the trial court's judgment to delete the condition that he pay for the costs of the SCRAM device, and we affirm the judgment as modified.  *See* Tex. R. App. P. 43.2(b).


TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 18, 2010